## MUNICIPAL LEASING CORPORATION

v.

### The UNITED STATES.

### No. 428–82C.

United States Claims Court.

March 17, 1983.

Michael E. Geltner, Washington, D.C., for plaintiff.

Beacham O. Brooker, Jr., Washington, D.C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., for defendant; Lt. Cdr. Dan Dearborn, U.S. Air Force, of counsel.

### ORDER

MEROW, Judge:

This matter comes before the court on defendant's motions for summary judgment and for a protective order, plaintiff's oppositions to these motions, and defendant's reply.

### *Facts*

The controversy at issue concerns a contract executed on July 14, 1980 between the United States (Base Contracting Division, Offutt Air Force Base) and Municipal Leasing Corporation. The contract provided for the "lease to ownership" of 10 Intecolor Terminals at rates to be paid monthly by the Air Force as follows: $634 for one ISC Model 8052 Desk Top Computer 13″ CRT; $839 for one ISC Model 8052 Desk Top Computer 19″ CRT; and $3,521 for the remaining 8 ISC Model 8052 Desk Top Computers 19″ CRT. The total monthly payment contemplated was $4,994. The basic contract period was for the two months remaining in the 1980 fiscal year—August 1 through September 30, 1980. The contract

provided for an additional "option year one," from October 1, 1980 through September 30, 1981, and an additional "option year two" from October 1, 1981 through September 30, 1982. By paying the prorated monthly rates over the life of the contract through September 30, 1982 (later modified to November 30, 1982), the Air Force would gain the ownership of the equipment.[1]

The contract, in Part I, Section H, contained three provisions concerning performance and payment during option years one and two as follows:

SP–04: OPTION TO EXTEND THE TERM OF THE CONTRACT DAR 7–104.27(c) (Undated)

This contract is renewable, at the option of the Government, by the Contracting Officer giving written notice of renewal to the Contractor by the first day of each fiscal year or within 30 days after funds for that fiscal year become available, whichever date is the later; provided that the Contracting Officer shall have given preliminary notice of the Government's intention to renew at least 30 days before this contract is to expire. Such a preliminary notice shall not be deemed to commit the Government to renewals. If the Government exercises this option for renewal, the contract as renewed shall be deemed to include this option provision. However, the total duration of this contract, including the exercise of any options under this clause, shall not exceed 26 months.

SP–05: AVAILABILITY OF FUNDS FOR NEXT FISCAL YEAR (1975 JUN) DAR 7–104.91(b)

Funds are not presently available for performance under this contract beyond 30 SEP 80. The Government's obligation for performance of this contract beyond this date is contingent upon the availability of appropriated funds from which payment for the contract purposes can be made. No legal liability on the part of the Government for payment of any mon-

ey for performance under this contract beyond 30 SEP 80 shall arise unless and until funds are made available to the Contracting Officer for such performance and notice of such availability, to be confirmed in writing by the Contracting Officer, is given to the Contractor.

SP–06 * * * Government's Intentions:

It is the intent of the Air Force to exercise the options as specified in SP–04 above. The Air Force shall use its best efforts to obtain appropriations of the necessary funds to meet its obligations and to continue this contract in force. The Air Force shall not replace the leased equipment with functionally similar equipment during the term of this contract.

In addition, the contract contained a standard (1968) "Termination for Convenience of the Government" clause provided for service contracts.

Under the contract plaintiff was required to submit invoices and it was specified (Part I–Section G) that, "2. Payment will be based on certified invoices for actual number of units completed during each invoice period." Part I–Section D, Item 2, of the contract provided that plaintiff "shall be responsible for the necessary packing, unpacking and placement of equipment required by the initial installation of the equipment and the removal of the equipment at the end of the contract." Part II–Section E provided that "Inspection and final acceptance of the equipment will be at destination, Hq SAC/ADXPO, Bldg 500, Room 2E23, Offutt AFB, NE 68113."

By an amendment to the contract effective October 1, 1980, its term was extended to cover the 1981 fiscal year period of October 1, 1980 through September 30, 1981. The amendment expressly called attention to the "Availability of Funds" provision of the contract.

On November 18, 1980 plaintiff submitted an invoice for $4,994 for the period of October 1–30, 1980. The amount paid to

---

1. Part I–Section F, Item 2, of the contract provided, "Lease to ownership prorated from equipment delivery date through 30 Sep 1982."

By amendment, effective December 10, 1980, the period was extended to "30 November 1982."

plaintiff was $3,495.80 based upon a hand-written notation placed on the invoice that "THERE WAS ONLY 7 INSTALLED FOR THE MONTH OF OCTOBER 80. C. HAMBY." Similar reduced payments were made for several subsequent months. For example, on invoices submitted, notations were made that only 9 were "INSTALLED" for December 1980 whereas only 6 were "installed" for January 1981. According to the documents filed to date in this matter, payments made by the Air Force totaled $8,987.20 less than the amounts plaintiff invoiced.

By a letter dated July 27, 1981 to plaintiff, the contracting officer provided notice of "the government's intentions to renew this contract for the period 01 Oct 81 through 30 Sep 82." The letter also stated "You are advised, however, that this preliminary notice will not be deemed to commit the government to a renewal." An internal Air Force memorandum dated August 26, 1981 references the SP–04 and SP–05 clauses of the contract and states "Funds will not be made available for renewal of the subject contract beyond 30 September 1981." The memorandum also requested that plaintiff be advised to provide shipping instructions for the leased equipment "within 30 days after receipt of your official termination notification."

On September 8, 1981 the contracting officer sent a letter to plaintiff stating (in part):

> This contract * * * will terminate as of 30 Sep 1981 in accordance with Special Provisions 04 and 05 as cited on page H–3. It is requested that you provide shipping instructions no later than 30 days after receiving this notification. * *

By a letter dated July 1, 1982 the contracting officer denied a claim plaintiff had submitted. The decision stated (in part):

> 3. Pursuant to Special Provision 04, the Government reserved the option to renew the contract at the close of the fiscal year in accordance with DAR 7–104.27(c). The Air Force availed itself of this option at the close of the fiscal year 1980 thereby extending payment and performance duties to 30 September 1981.

> 4. Although the Air Force agreed to use its best efforts to exercise the contract's options by Special Provision 06, ultimately, any renewal of the subject contract was totally contingent upon the availability of funds. DAR 7–104.91(b)

> 5. Despite our efforts, when the United States Government determines that Air Force requirements no longer exist, it will not appropriate funds. This is evidenced by the fact that the Air Force did not replace the equipment with functionally similar equipment during the term of the contract, nor has it been replaced to date.

> 6. Consequently, due to the non-availability of appropriated funds, the contract expired on 30 September 1981 without legal liability on the part of Government for payment or performance. DAR 7–104.91(b). You were fully apprised of the inability of Air Force to renew by our letter dated 8 September 1981.

On August 26, 1982 plaintiff filed its petition in this matter, asserting as a first claim that the Air Force breached the contract by failing to make monthly payments in the proper amount and, as a second claim, that the Air Force breached the contract by failing to renew it "when the only condition permitting non-renewal did not exist."

### Discussion

Defendant moves for summary judgment, asserting that there is no material issue of fact in dispute and that it is entitled to judgment as a matter of law. Defendant seeks a protective order to preclude discovery pending resolution of its Rule 56 motion. Plaintiff opposes defendant's motions, asserting the existence of material factual issues which preclude summary disposition of this litigation.

It is concluded that unresolved factual issues remain so as to preclude a summary resolution of this matter on the basis of the parties' submissions to date.

■ With respect to plaintiff's first claim relating to the asserted short payments by the Air Force, defendant relies upon the contract provision that "Payment will be based on certified invoices for actual number of units completed during each invoice period." Defendant cites invoices bearing notations showing fewer than 10 units installed during certain invoice periods and a letter noting certain "acceptance" dates for each unit. In response, plaintiff asserts that the contract required only that plaintiff deliver and make the initial installation of the equipment and that any subsequent failure of the delivered equipment, as specified by the Air Force, was not plaintiff's responsibility. Plaintiff argues that defendant has not established the basis for the "short" payments made. For example, plaintiff notes that, on the voucher notations, the number of units dropped in the period from December 1980 to January 1981, indicating that payments were not made for some units after their initial installation. Neither party has submitted an affidavit in this matter.

The basic purpose of the summary judgment procedure is to avoid unnecessary trials. Its use is limited to situations where no genuine issue of material fact remains. *Exxon v. National Foodline Corp.,* 579 F.2d 1244 (Cust. & Pat.App.1978).

Based upon the documents submitted, it is not possible to reach a conclusion as to the validity or invalidity of plaintiff's claim to recover the $8,987.20 (or some portion thereof) not paid by the Air Force. The "Payment" clause of the contract refers to "units completed." The "Deliveries and Performance" provision of the contract notes that the "lease to ownership" is prorated from "equipment delivery date." The "Inspection and Acceptance" clause indicates that a "final acceptance" is contemplated. The contemporaneous construction of the parties (to the extent indicated on the documents filed) is confusing with respect to the payment issue. In these circumstances, there are material issues of fact remaining on the "short payment" claim such that it is not one which appropriately can be resolved on the summary submissions filed to date.

With respect to plaintiff's second claim relating to the Air Force's determination not to renew the contract for the 1982 fiscal year, defendant asserts a two-pronged argument. Defendant first argues that the Air Force had a right under SP–04 and SP–05 not to renew the contract as appropriated funds were not made available. Alternatively, defendant argues that plaintiff cannot recover as the government had a right to terminate plaintiff's performance under the "Termination for Convenience of the Government" clause incorporated in the contract. In response, plaintiff urges that material issues of fact exist which preclude summary resolution of this claim.

■ Defendant's reliance upon SP–04 and SP–05 to support nonrenewal is undercut by the provisions of SP–06 in which the Air Force promised "to use its best efforts to obtain appropriations of the necessary funds to meet its obligations and to continue this contract in force." The documents filed to date create a material factual issue as to whether there was compliance with this agreement.[2]

■ Defendant's alternative argument, premised upon an asserted right to terminate plaintiff's performance for the convenience of the government, presents an issue where material facts are also in dispute. Under *Torncello v. United States,* 231 Ct.Cl. ——, 681 F.2d 756 (1982), the "Termination for Convenience of the Government" clauses in government contracts can appropriately be invoked only in the event of some kind of change from the circumstances of the bargain or in the expectations of the par-

---

2. Defendant indicates a position that SP–06 may not be a valid provision, but existing precedent supports the validity of a duty to attempt to obtain funds when an agency contracts to do so. *S.A. Healy Co. v. United States,* 216 Ct.Cl. 172, 576 F.2d 299 (1978). Any judgment entered by this court for any breach of such a contractual duty would be paid from funds appropriated by Congress. 31 U.S.C. 724a. Accordingly, citations to 31 U.S.C. 665, 41 U.S.C. 11, as invalidating SP–06 are wide of the mark.

ties. Any lack of appropriated funds after the expenditure of the Air Force's "best efforts" to obtain such funds was part of the original circumstances of the bargain. Accordingly, having dealt with this event in SP 04–06, the agreements there reached may not be abrogated by the defensive and constructive use of convenience termination principles.

However, the documents filed to date indicate the possibility that the nonrenewal of the contract for the 1982 fiscal year may have resulted from a change in circumstances such that convenience termination principles could be applied to determine the government's liability, if any. The facts are not clear because the Air Force expressly failed to renew the contract under SP 04–05, but utilized language in the process which indicated a possible change in circumstances rather than a lack of appropriated funds as the basis for the action taken. Plaintiff urges, however, that the failure to renew may well stem from some deficiency in the operation of the equipment by the Air Force. Moreover, neither party addresses or resolves the question whether plaintiff has received compensation equal to that which would have been paid had the contract been terminated for the convenience of the government.

Again, as material facts are in issue, summary judgment is not appropriate.

### Conclusion

In the above circumstances, as a basis for summary disposition of this matter has not been established, it is ORDERED:

(1) Defendant's motion for summary judgment filed December 16, 1982 is denied;

(2) The time within which defendant may submit its response to the pretrial order filed November 4, 1982 is enlarged to and including April 15, 1983;

(3) Defendant's motion for a protective order filed February 3, 1983 is granted to the extent that the deposition notice previously served by plaintiff is cancelled; otherwise, except as so granted, defendant's motion is denied;

(4) Prior to instituting any further discovery, counsel shall first confer (by telephone or otherwise) and attempt to reach an agreed schedule for any discovery considered to be required, giving due consideration to the information which will be produced by counsel in response to the pretrial order filed November 4, 1982.