## MUNICIPAL LEASING CORPORATION

### v.

### The UNITED STATES.

### No. 428–82C.

United States Claims Court.

Dec. 12, 1984.

Michael E. Geltner, Michael W. Scott, Washington, D.C., for plaintiff.

Beacham O. Brooker, Jr., Washington, D.C., with whom was Asst. Atty. Gen. J.

Paul McGrath, Washington, D.C., for defendant.

### OPINION

MEROW, Judge:

This matter comes before the court on cross-motions for summary judgment. Previously, in *Municipal Leasing Corp. v. United States,* 1 Cl.Ct. 771 (1983), defendant's summary judgment motion was denied. The parties have subsequently filed pretrial statements, responses thereto and additional summary judgment motions.

### Facts

This case involves a "lease to ownership" of 10 Intecolor Terminals between the United States, Base Contracting Division, Offutt Air Force Base (Air Force) and Municipal Leasing Corporation (Municipal). After selecting the equipment it required, the Air Force contracted with Municipal under a sole source contract to provide the Intecolor desk top computer terminals. Prior to the procurement, the Air Force was considering replacing its computer hardware in order to standardize its computer system. The Air Force was using Hazeltine terminals which were misfunctioning. To satisfy its immediate needs, the Air Force was faced with a choice of whether to procure different computers or to purchase replacement program chips for the Hazeltines. The decision to purchase the Intecolors was supported by the fact that the producer of the replacement chips required a minimum purchase of 250 chips and the Air Force only required 20. However, the Intecolors would not interface with the existing system. It was decided to lease computers from Municipal until the Air Force was able to standardize its system.

The basic contract period was from August 1 through September 30, 1980. The contract provided for an "option year one" from October 1, 1980 through September 30, 1981, and an "option year two" from October 1, 1981 through September 30, 1982. The Air Force would acquire ownership of the equipment by paying prorated monthly payments over the life of the contract through September 30, 1982 (later modified to November 30, 1982). The monthly rates were as follows: $634 for one ISC Model 8052 Desk Top Computer 13″ CRT; $839 for one ISC Model 8052 Desk Top Computer 19″ CRT; and $3,521 for the remaining 8 ISC Model 8052 Desk Top Computers 19″ CRT, totaling $4,994.

The contract specified "payment will be based on certified invoices for actual numbers of units completed during each invoice period." The contract also provided that plaintiff "shall be responsible for the necessary packing, unpacking and placement of equipment required by the initial installation of the equipment and the removal of the equipment at the end of the contract." Also, inspection and final acceptance of the equipment was at destination.

On November 18, 1980 plaintiff submitted a $4,994 invoice for October 1–30, 1980. Plaintiff was paid $3,495.80. The payment was based on a handwritten notation on the invoice which stated "THERE WAS ONLY 7 INSTALLED FOR THE MONTH OF OCTOBER 80. C. HAMBY." Similar reduced payments were made for several subsequent months. For example, invoice notations were made that 9 computers were installed in December 1980 and that 6 computers were installed in January 1981. Overall, Air Force payments totaled $8,987.20 less than the amount plaintiff invoiced.

The following clauses were included in the contract:

SP–04: OPTION TO EXTEND THE TERM OF THE CONTRACT DAR 7–104.27(c) (Undated)

This contract is renewable, at the option of the Government, by the Contracting Officer giving written notice of renewal to the Contractor by the first day of each fiscal year or within 30 days after funds for that fiscal year become available, whichever date is the later; provided that the Contracting Officer shall have given preliminary notice of the Government's intention to renew at least 30 days before this contract is to expire.

Such a preliminary notice shall not be deemed to commit the Government to renewals. If the Government exercises this option for renewal, the contract as renewed shall be deemed to include this option provision. However, the total duration of this contract, including the exercise of any options under this clause, shall not exceed 26 months.

SP–05: AVAILABILITY OF FUNDS FOR NEXT FISCAL YEAR (1975 JUN) DAR 7–104.91(b)

Funds are not presently available for performance under this contract beyond 30 SEP 80. The Government's obligation for performance of this contract beyond this date is contingent upon the availability of appropriated funds from which payment for the contract purposes can be made. No legal liability on the part of the Government for payment of any money for performance under this contract beyond 30 SEP 80 shall arise unless and until funds are made available to the Contracting Officer for such performance and notice of such availability, to be confirmed in writing by the Contracting Officer, is given to the Contractor.

SP–06 * * * Government's Intentions:

It is the intent of the Air Force to exercise the options as specified in SP–04 above. The Air Force shall use its best efforts to obtain appropriations of the necessary funds to meet its obligations and to continue this contract in force. The Air Force shall not replace the leased equipment with functionally similar equipment during the term of this contract.

In addition, the contract contained a standard (1968) service contract "Termination for Convenience of the Government" clause.

By amendment effective October 1, 1980, the contract was extended to cover the 1981 fiscal year. The amendment expressly called attention to the "availability of funds" contract provision.

In a letter dated July 27, 1981 the contracting officer provided notice of "the government's intentions to renew this contract for the period 01 Oct 81 through 30 Sep 82." The letter also stated "You are advised, however, that this preliminary notice will not be deemed to commit the government to a renewal." An internal Air Force memorandum dated August 26, 1981 references the SP–04 and SP–05 clauses of the contract and states "Funds will not be made available for renewal of the subject contract beyond 30 September 1981." The memorandum also requested that plaintiff be advised to provide shipping instructions for the leased equipment "within 30 days after receipt of your official termination notification."

On September 8, 1981 the contracting officer sent a letter to plaintiff, stating (in part):

This contract * * * will terminate as of 30 Sep 1981 in accordance with Special Provisions 04 and 05 as cited on page H–3. It is requested that you provide shipping instructions no later than 30 days after receiving this notification. * *

By a letter dated July 1, 1982 the contracting officer denied a claim plaintiff had submitted. The decision stated (in part):

3. Pursuant to Special Provision 04, the Government reserved the option to renew the contract at the close of the fiscal year in accordance with DAR 7–104.27(c). The Air Force availed itself of this option at the close of the fiscal year 1980 thereby extending payment and performance duties to 30 September 1981.

4. Although the Air Force agreed to use its best efforts to exercise the contract's options by Special Provision 06, ultimately, any renewal of the subject contract was totally contingent upon the availability of funds. DAR 7–104.91(b)

5. Despite our efforts, when the United States Government determines that Air Force requirements no longer exist, it will not appropriate funds. This is evidenced by the fact that the Air Force did not replace the equipment with functionally similar equipment during the term of the contract, nor has it been replaced to date.

6. Consequently, due to the non-availability of appropriated funds, the contract expired on 30 September 1981 without legal liability on the part of Government for payment or performance. DAR 7–104.91(b). You were fully apprised of the inability of Air Force to renew by our letter dated 8 September 1981.

On August 26, 1982 plaintiff filed its petition in this matter. Plaintiff alleges the Air Force breached the contract by failing to make monthly payments in the proper amounts and by failing to renew the contract when the only precondition permitting nonrenewal, unavailability of funds, did not exist.

On December 16, 1982 defendant moved for summary judgment. Defendant argued that (1) the Air Force was within its rights under the contract to decline to renew the lease for fiscal year 1981 due to the unavailability of funds; (2) alternatively, nonrenewal was proper under a constructive convenience termination theory; and (3) plaintiff was not underpaid during the early months of the contract based on the contract's payment provisions.

By order issued March 17, 1983, 1 Cl.Ct. 771 (1983), defendant's motion was denied. It was determined that a material factual issue remained concerning Air Force compliance with SP–6. It was also determined that the facts as presented by the parties were not sufficiently clear to support a finding of termination for convenience. This conclusion was based on the fact that the Air Force expressly terminated the contract for unavailability of funds, but used language indicating changed circumstances which may support a constructive convenience termination. Also, it was determined that the parties failed to address the question of whether plaintiff had received compensation equal to that which it would be due had the contract been terminated for convenience. Finally, it was concluded that the issue of short payments could not be resolved on the filed submissions.

The parties subsequently filed their pretrial statements and responses thereto. On June 24, 1983 plaintiff filed a motion for summary judgment on the constructive convenience termination claim. Defendant cross-moved for summary judgment on both claims.

For the reasons stated below, it is concluded that plaintiff's motion for summary judgment on the issue of liability is granted and defendant's motion is denied.

### Discussion

It is conceded that best efforts were not used to obtain appropriated funds. Rather, the Air Force determined that the contract was unnecessary and did not seek funds to renew the contract for "option year two." Defendant defends its action, arguing it constitutes a constructive convenience termination. According to the Air Force, the decision not to seek appropriations resulted from a changed condition. The central issue, therefore, is whether the circumstances were changed such as to warrant the application of the termination for convenience clause.

 Contract provisions must be read as a whole. *Hol-Gar Manufacturing Corp. v. United States*, 169 Ct.Cl. 384, 389, 395, 351 F.2d 972, 979 (1965). "[A]n interpretation which gives a reasonable meaning to all [the clauses] will be preferred to one which leaves [one or more clauses] useless * * * meaningless or superfluous; nor should any [clause] be construed as being in conflict with another unless no other reasonable interpretation is possible." *Mason v. United States*, 222 Ct.Cl. 436, 445, 615 F.2d 1343, 1348 (1980), and cases cited therein. Applying these principles to this instance, the termination for convenience clause must be read to be limited by the best efforts clause.

 SP–06 states the Air Force will use its best efforts to obtain appropriations for the contract. It also states "[t]he Air Force shall not replace the leased equipment with functionally similar equipment during the term of this contract." Before contracting with Municipal for the Intecolor Terminals, the Air Force considered purchasing replacement chips for the Ha-

zeltines. However, this option was rejected because the Air Force was unable to purchase a sufficiently small quantity. Toward the end of fiscal year 1981, the Air Force decided to pursue this option. To this end, it did not renew Municipal's contract. This action directly contravenes SP–06.

■ The termination for convenience clause can appropriately be invoked only in the event of some kind of change from the circumstances of the bargain or in the expectations of the parties. *Municipal Leasing Corp. v. United States*, 1 Cl.Ct. 771, 774–75 (1983); *Torncello v. United States*, 231 Ct.Cl. 20, 681 F.2d 756 (1982). In this instance, the government promised that it would not replace the leased terminals with functionally equivalent equipment. Repairing the Hazeltines essentially replaced the Intecolor terminals. Not only did the Air Force substitute the use of the Intecolor terminals with the Hazeltines, but Hazeltine repair was considered as an alternative prior to contracting with Municipal. The termination for convenience clause will not act as a constructive shield to protect defendant from the consequences of its decision to follow an option considered but rejected before contracting with plaintiff. *See Torncello v. United States*, 231 Ct.Cl. 20, 681 F.2d 756 (1982).

## Conclusion

For the above stated reasons, it is ORDERED:

(1) Plaintiff's motion for summary judgment on the issue of breach of contract liability is granted;

(2) Defendant's cross-motion for summary judgment is denied;

(3) Revised pretrial submissions covering the amount of the damages owed to plaintiff shall be submitted, pursuant to the order of December 12, 1984, with the initial response by plaintiff due on or before January 11, 1985, to be followed in 30 days by defendant's response, which should be followed in 15 days by plaintiff's reply.