# United States Court of Appeals for the Federal Circuit

05-1541

METROPOLITAN AREA TRANSIT, INC.,

Appellant,

v.

R. James Nicholson, SECRETARY OF VETERANS AFFAIRS,

Appellee.

William L. Lucas, William L. Lucas, P.A., of Edina, Minnesota, argued for appellant.

Tara K. Hogan, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellee. On the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Todd M. Hughes, Assistant Director, and Marla T. Conneely, Attorney.

Appealed from: United States Department of Veterans Affairs Board of Contract Appeals

Administrative Judge Richard W. Krempasky

# United States Court of Appeals for the Federal Circuit

05-1541

METROPOLITAN AREA TRANSIT, INC.,

Appellant,

v.

R. James Nicholson, SECRETARY OF VETERANS AFFAIRS,

Appellee.

_____

DECIDED: August 28, 2006

_____

Before NEWMAN, SCHALL, and DYK, <u>Circuit Judges</u>.

DYK, <u>Circuit Judge</u>.

Metropolitan Area Transit, Inc. ("MAT") appeals from the decision of the Department of Veterans Affairs Board of Contract Appeals ("the Board"), denying MAT's breach of contract claim. We <u>affirm</u>.

## BACKGROUND

The Department of Veterans Affairs ("VA") operates two medical facilities in Minnesota and Wisconsin. The VA requires various modes of special transportation for its patients, including wheelchair van services for the wheelchair bound and litter vans for non-ambulatory patients who need to be transported on "litter beds" or gurneys. In addition, the VA also authorizes reimbursement for patients to travel by taxicab if they

are ambulatory but in need of some assistance with transportation—patients with walkers, for example.

From 1993 through 1996, the VA awarded MAT an indefinite delivery/indefinite quantity requirements contract to provide certain transportation services; specifically, to "Provide Transportation of the Handicapped (primarily wheelchair) for the VA Medical Center" in Minnesota. 1993 Requirements Contract at 3-5. There is no evidence that the VA ordered taxi and litter transportation from MAT under this contract and no evidence of any complaints from MAT concerning the lack of such orders.

On September 3, 1999, the VA awarded MAT another indefinite delivery/indefinite quantity requirements contract for providing handicap transportation services at the Minnesota and Wisconsin medical facilities. The contract term was for federal fiscal year October 1, 1999, through September 30, 2000, with renewal options for the following four fiscal years. The request for proposals stated:

> There are Ground Ambulance patient transportation contracts available to the VA Medical Center . . .; the Government reserves the right to solely determine how patients are to be transported. However, all Handicapped Transportation requests will be offered the Contractor.

> ## REQUIREMENTS

> Provide Transportation of the Handicapped (primarily by wheelchair) for the VA Medical Center . . . in accordance with the Specifications of this Request for Proposal. . . .

The contract's Specifications set forth physical requirements for wheelchair vans, qualifications for drivers and attendants to accompany the vans, and procedures for transporting patients. For example, in detailing passenger transportation procedures, the Specifications noted that "[w]hen transporting patients using motorized wheelchairs or electric carts[,] patients will be transferred to a regular wheelchair before being

05-1541                                                                          2

loaded in the vehicle. The motorized wheelchair or electric cart will be loaded separately and must be secured to the vehicle during transport." The Specifications said nothing, however, about taxi or litter transportation.

During the 1999-2000 contract period, the VA ordered wheelchair transportation services from MAT and taxi and litter transportation from other providers. The VA did, however, occasionally ask MAT to provide services for patients requiring transport by taxicab whenever the normal taxicab provider was unable to provide such services. The VA never asked MAT to provide transportation for litter patients. MAT did not complain about the limited scope of the services ordered.

The VA exercised its option to renew the contract with MAT for another year, through September 30, 2001. During the renewal process, the VA invited questions from MAT, and MAT posed no questions or objections concerning the scope of the services ordered. The VA thus continued to order wheelchair services from MAT as it had in the previous year.

On February 28, 2001, before the end of the 2000-2001 contract year, MAT requested that the VA increase the contracted trip price because the number of wheelchair van trips had been less than the contract estimate and, as a result, MAT was losing revenue. After the contracting officer initially denied MAT's request, MAT informed the VA that it would discontinue its services on March 31, 2001, due to a lack of resources. The VA then agreed to modify the contract trip price and MAT continued to provide its services. Again, MAT raised no objections concerning the scope of the services ordered by the VA.

05-1541                                                                 3

On April 3, 2003, MAT submitted a claim to the contracting officer arguing that it was entitled to damages because the VA had breached the 1999-2001 contract by utilizing other sources for transportation of wheelchair patients and by providing a negligent estimate of the amount of wheelchair trips that would be required. The contracting officer did not issue a final decision within sixty days, and thus was deemed to have denied MAT's claim under 41 U.S.C. § 605(c)(5). MAT appealed to the Board which held an evidentiary hearing. For the first time, MAT claimed that the VA breached the contract by failing to order taxicab and litter transportation from MAT.

The Board found that the contract's reference to "Handicapped Transportation" was ambiguous because it was unclear whether "Handicapped Transportation" only referred to the transportation of wheelchair patients or whether it also included the taxicab and litter patients. The Board thus looked to the "context" of the contract and "contemporaneous circumstances" to decipher the intent of the parties. The Board found that from 1993 through 1996, under the previous contract with the VA, there was no evidence that MAT ever asserted any right to transport taxi or litter patients during performance of that contract. Similarly, MAT had not asserted a right to transport taxi or litter patients under the 1999-2001 contract until the Board proceedings. The Board also found that MAT's president admitted that he understood that the contract was for wheelchair patients and not for taxi or litter patients. Based on these findings, the Board concluded that MAT had no contractual right to transport taxi or litter patients. MAT timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(10).

DISCUSSION

MAT's primary argument on appeal is that the plain language of the contract required the VA to utilize MAT to transport all taxi and litter patients as well as wheelchair patients. See Coast Fed. Bank, FSB v. United States, 323 F.3d 1035, 1038 (Fed. Cir. 2003) (en banc) ("Contract interpretation begins with the language of the written agreement.").

We agree with the Board that the term "Handicapped Transportation" is on its face ambiguous. "Handicapped" is defined as "having a physical or mental disability that substantially limits activity . . . ." Webster's Third New International Dictionary of the English Language Unabridged 93a (2002). On one hand, taxicab patients might be viewed as falling outside the definition because their activity is not "substantially limited." Litter patients, on the other extreme, might fall outside the definition because their mobility is not substantially limited; rather, they are unable to achieve mobility at all without assistance.

MAT argues that this ambiguity is resolved by the contract itself, which states that the contractor will provide transportation of the handicapped "primarily by wheelchair." MAT's argument is that "primarily by wheelchair" implies that the contractor would primarily transport wheelchair patients but would also transport taxi and litter patients. While we agree that the contract language implies that the required transportation services will not be limited to wheelchair patients, there is nothing to indicate that all taxicab and litter patients were to be transported under the contract. Significantly, the estimate of the VA's requirements under the contract and the pricing for the trips were based entirely on wheelchair transportation. There is no suggestion

that MAT was unaware of the basis for the estimates or the method of pricing. The contract states that the contractor is to provide handicapped transportation services "in accordance with the Specifications . . . ." The Specifications say nothing about the transportation of taxicab and litter patients. The Specifications deal almost exclusively with the transportation of wheelchair patients. They also contemplate that the contractor would transport patients using electric carts. See Appellee's Apendix at 111 ("When transporting patients using motorized wheelchairs or electric carts . . . ."). Thus when read in the context of the Specifications, the phrase "primarily by wheelchair" could have been referring to the transportation of electric cart patients. The phrase "primarily by wheelchair" therefore does not, as MAT argues, show unequivocally that taxicab and litter patients were included.

Having found the contract ambiguous, we may appropriately look to extrinsic evidence to aid in our interpretation of the contract. See City of Tacoma, Dep't of Pub. Utils. v. United States, 31 F.3d 1130, 1134 (Fed. Cir. 1994); see also Banknote Corp. of Am. v. United States, 365 F.3d 1345, 1353 (Fed. Cir. 2004); Uniform Commercial Code § 2-208 (2003); Restatement (Second) of Contracts § 202(4) (1981) (course of performance may be considered).

Here, the parties' course of performance makes clear that both the VA and MAT believed that the contract was for wheelchair patient transportation, and did not include taxi or litter patient transportation. As the Board pointed out, MAT had a previous contract with the VA from 1993 through 1996 with similar transportation requirements, and MAT never asserted a right to transport taxi or litter patients under that contract. Under the successor contract at issue here, MAT performed for one year and never

complained about the fact that it had not received taxi or litter transportation requests. When the VA exercised its option to renew and invited questions, MAT did not inquire about the taxi or litter patients. Indeed, MAT did not even assert its present theory (that the contract covered taxicab and litter transportation) until briefing before the Board. There was no testimony that MAT was unaware of the VA's need for litter or taxi transportation.

When, as here, the contract language is ambiguous, the parties' own course of performance is highly relevant to contract interpretation. See City of Tacoma, Dep't of Pub. Utils., 31 F.3d at 1134. In particular:

> Where an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement.

Restatement (Second) of Contracts § 202(4) (emphasis added); see Uniform Commercial Code § 2-208 (same).

That the contract was not for taxi and litter patient transportation is further confirmed by the testimony of MAT's owner and president (and sole officer), who explained that he understood that the contract was for special transportation of wheelchair bound patients and that the contract was not for litter or taxicab patients. When faced with an ambiguous contract, we "construe its language to effect the parties' intent at the time they executed the [contract]." Dureiko v. United States, 209 F.3d 1345, 1356-57 (Fed. Cir. 2000); see also King v. Dep't of Navy, 130 F.3d 1031, 1033 (Fed. Cir. 1997). The parties' course of conduct and the testimony of MAT's president make clear that the parties did not intend that MAT provide taxi and litter transportation

05-1541                                          7

services under the contract.  Based on these circumstances, we agree that MAT did not have a right under the contract to provide taxi and litter transportation.

## CONCLUSION

For the foregoing reasons, the decision below is affirmed.

## COSTS

No costs.

## AFFIRMED