# United States Court of Appeals for the Federal Circuit

---

**JOHN MCHUGH, SECRETARY OF THE ARMY,**
*Appellant,*

**v.**

**DLT SOLUTIONS, INC.,**
*Appellee.*

---

2009-1536

---

Appeal from the Armed Services Board of Contract Appeals in Case No. 54812, Administrative Judge David W. James, Jr.

---

Decided: September 23, 2010

---

MATTHEW H. SOLOMSON, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellant. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, BRIAN M. SIMKIN, Assistant Director, and MEREDYTH COHEN HAVASY, Attorney. Of counsel on the brief was ROBERT T. WU, Trial Attorney, Contract and Fiscal Law Division, United States Department of the Army, of Arlington, Virginia.

DAVID C. AISENBERG, Looney, Cohen, Reagan & Aisenberg LLP, of Boston, Massachusetts, argued for appellee.

_____

Before LOURIE, FRIEDMAN, and MOORE, *Circuit Judges*.

LOURIE, *Circuit Judge*.

The Secretary of the Army appeals from the final decision of the Armed Services Board of Contract Appeals holding that the government breached a non-substitution clause of a delivery order awarded to DLT Solutions, Inc. ("DLT"). *Appeal of DLT Solutions, Inc.*, ASBCA No. 54812, 09-1 BCA ¶ 34067 ("Board Opinion"). Because we determine that under a proper interpretation of the contract, the government did not replace the contracted-for software following the termination of its contract with DLT, and hence did not breach the contract, we reverse the Board's decision.

## BACKGROUND

DLT is an authorized software reseller and licensor under a blanket purchase agreement ("BPA") between Oracle Corporation and the Army's Information Technology E. Commerce and Commercial Contracting Center. DLT is a reseller of Oracle software and software licenses under the terms of the BPA. In February 2003, DLT was awarded Delivery Order No. 29 ("the contract") to deliver certain Oracle software ("DO29 software") to the Navy's Office of Civilian Human Resources ("OCHR") on a "lease to ownership" basis. The contract award was based on OCHR's October 2000 functionality assessment which resulted in its plan to develop a system that would allow access to a variety of data related to HR training, benefits, resumes, organizations, and positions through a single "portal" to the Navy-wide infrastructure of software programs that interfaced with the Defense Civilian Per-

sonnel Data System ("DCPDS"), the Department of Defense's ("DoD's") department-wide system for managing civilian HR functions and employee records for all DoD civilian employees. The DCPDS is managed by DoD's Civil Personnel Management Service ("CPMS").

The Army issued the contract on February 28, 2003. The contract provided OCHR with lease-to-own licenses to thirteen Oracle applications used for performing various functions, including marketing and HR management. Under the terms of the contract, DLT would receive a down payment of $2,880,000 upon delivery of the contracted software to OCHR, and $8,639,000 by the end of 2003 in return for ownership of the software. Following the award, DLT assigned all remaining payments to Citizens Leasing Corporation, its financing company. On March 7, 2003, the contract was modified to include a non-substitution clause that prevented OCHR from replacing the leased Oracle software with functionally similar software for a period of one year after the expiration or termination of the contract. The clause reads:

> If (i) an Order expires prior to the expiration of the . . . full Lease Term . . . or (ii) the Government terminates the Order pursuant to a Termination for Convenience, the Government agrees not to *replace* the equipment and/or Software leased under this Order with functionally similar equipment and/or software for a period of one (1) year succeeding such expiration or termination.

J.A. 114 (emphasis added).

DLT delivered the Oracle software to OCHR on March 18, 2003. In July 2003, OCHR learned that it did not have the authority to implement applications that it had envisioned following its prior functionality assessment because the DoD managed the HR platforms and CPMS

did not approve the use of the DO29 software with DCPDS. Moreover, OCHR believed that the hardware it currently possessed was not adequate to run the DO29 software. Thus, the software was never deployed by OCHR. On March 22, 2004, OCHR issued a notice to DLT, terminating the contract for convenience, effective March 31, 2004. On November 3, 2004, the contracting officer returned all compact disks and software documentation relating to the contract, along with a statement that the DO29 "software was never installed."

Prior to the contract award to DLT, OCHR had used a software suite comprised of twenty-six software applications, including DCPDS, for all its personnel management needs. It continued to use those applications between the time that it awarded the contract and for the year following the termination of the contract (the "non-substitution period"). At the time that OCHR entered into the contract, the DCPDS software suite employed version 10.7 of the underlying Oracle Federal HR software, a customized version of the Oracle software that supports federal statutory and regulatory reporting requirements. Between July 18, 2003 and August 3, 2003, CPMS upgraded the Oracle Federal HR software used by DCPDS from version 10.7 to 11i, adding the capability to access DCPDS applications through a web interface. This Oracle upgrade was the only change made to OCHR's existing applications during the entire period between the award of the contract and its termination.

In July 2004, DLT submitted a certified claim for $8,167,328 to the contracting officer.[1] The claim alleged that the government had breached the non-substitution clause of the contract by replacing the DO29 software

---

[1] DLT later amended the claim, reducing the claimed damages to $6,978,328.

with functionally equivalent DCPDS software. On November 3, 2004, the contracting officer denied the claim, stating that the government was not liable for any damages because it had taken no action that could be reasonably construed as a substitution of the DO29 software. DLT appealed the denial of that claim to the Board. The parties did, however, enter into a settlement agreement whereby the government was to pay DLT $1,283,075 for all expenses associated with the termination for convenience.

On appeal, the Board found that nine out of twenty-six applications that OCHR continued to use during the non-substitution period were "functionally similar" to the DO29 software. *Board Opinion* at 15. The Board concluded that OCHR's continued use of these nine pre-existing applications during the non-substitution period constituted a software replacement that breached the terms of the non-substitution clause. *Id.* Moreover, the Board found that two of those nine applications had received the Oracle Federal HR version 11i upgrade that CPMS made in 2003, enabling web access capability for those applications. *Id.* The Board held that the upgraded software constituted a replacement of the DO29 software as well. *Id.* The Board cited two prior decisions, one from the United States Claims Court[2] ("Claims Court") and one from the General Services Board of Contract Appeals ("GSBCA"), for the proposition that continued use of pre-existing software, both with or without an upgrade, could constitute a violation of a non-replacement clause. *See id.* (citing *Municipal Leasing Corp. v. United States*, 7 Cl. Ct. 43 (1984) and *Northrop Grumman Computing Sys., Inc.*, GSBCA No. 16367, 06-02 BCA ¶33,324).

---

[2]    The name of the United States Claims Court was changed to the United States Court of Federal Claims in 1992.

The Board also found that the word "replace" in the non-substitution clause did not require that OCHR actually use the DO29 software prior to replacing it. To the extent that there was a use requirement in the contract, the Board considered the fact that OCHR had analyzed and evaluated the DO29 software to determine whether it could install the software and interface it with DCPDS, and concluded that that evaluation satisfied the requirement. *Board Opinion* at 14. Regardless whether the government had used the software, the Board reasoned that the non-substitution clause was bargained-for consideration between the parties and was binding. *Id.* The Board therefore sustained the appeal, holding that OCHR had breached the non-substitution clause in the contract and was liable for expectation damages. The government timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(10).

DISCUSSION

Under the Contract Disputes Act, we uphold findings of fact by the Board "unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence." 41 U.S.C. § 609(b). However, contract interpretation under the Act is a question of law, which we review *de novo* with "no deference owing to the interpretation adopted by either the agency or the Board." *Lockheed Martin IR Imaging Sys., Inc. v. West*, 108 F.3d 319, 322 (Fed. Cir. 1997); *see* § 609(b) ("[T]he decision of the agency board on any question of law shall not be final or conclusive"); *Textron Def. Sys. v. Widnall*, 143 F.3d 1465, 1468 (Fed. Cir. 1998) ("Contract interpretation is a question of law over which we exercise complete and independent review.").

The government argues that the Board misinter-preted the non-substitution clause by finding that the software that had been in use by OCHR before, during, and after the contract was a "replacement" of the DO29 software. It argues that the DO29 software was never replaced, and the Board's interpretation of the contract term "replace" to include such continued use of pre-existing software is simply contrary to the dictionary definition of the word "replace" as being "substituted for." The government urges us not to adopt such an interpreta-tion because that would require it to cease use of any and all functionally similar software, including pre-existing software, every time it terminates a contract with a software provider for convenience, thereby severely im-pacting the government's mission. It argues that the purpose of such a clause is to prevent the government from terminating the contract at issue in order to take advantage of better or less expensive software that may later become available from a different vendor. Here, it contends, OCHR's termination of the contract was not intended to allow use of better or cheaper software from a different vendor. As a matter of fact, it notes that OCHR never installed or used the DO29 software in the first place.

The government further contends that the Board erred in its reliance on non-binding precedent that is easily distinguishable from the facts presented here. According to the government, both *Municipal Leasing* and *Northrup Grumman* involved fact situations where the government performed repairs or upgrades to existing equipment that were substantial enough to be regarded as functionally new equipment that replaced the con-tracted-for equipment. In contrast, the government argues, the Oracle Federal HR version upgrade of DCPDS did not fundamentally alter the pre-existing software; it

merely changed it to a web-based one. Moreover, it notes, the upgrade only affected a small portion—two out of twenty-six applications—of the pre-existing software. In addition, the government points to the fact that OCHR had been using and would have continued to use DCPDS regardless of the termination of the contract. The government also states that it was DLT's financing company, Citizens Leasing Corporation, that drafted the language of the clause and insisted upon its inclusion, and therefore argues that any ambiguity in the clause should be read against DLT.

In response, DLT argues that the non-substitution clause was bargained-for consideration, and was intended to limit the government from adopting *any* alternative to the DO29 software, even a pre-existing one. It argues that the Board's interpretation of the term "replace" is correct because the term necessarily includes any alternative regardless whether it was available to the government prior to the contract. All that is relevant is that a set of HR software applications continued to be used in place of the contracted-for software. It also contends that nothing in the clause requires that the government use the DO29 software. Regardless, it notes that the Board made a factual finding that OCHR did in fact "use" the leased software. It argues that the government had previously considered using the DCPDS software suite for the functionality that it aimed to achieve with the DO29 software, and had subsequently rejected that as an option. Alternatively, it argues that the Board properly found that the software upgrade to two of the DCPDS applications amounted to a replacement of the DO29 software.

We disagree with the Board's interpretation of the term "replace" in the non-substitution clause. That is a question of contract interpretation that we review *de novo*

on appeal.  Contract interpretation begins with the plain language of the written agreement.  *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996).  A reading of the non-substitution clause to prohibit the government from continuing to use software, unmodified in any manner, and one that it was already using prior to the contract award to DLT is not reasonable.  *Hercules, Inc. v. United States*, 292 F.3d 1378, 1381 (Fed. Cir. 2002) ("The contract must be construed to effectuate its spirit and purpose giving reasonable meaning to all parts of the contract.").  Contrary to DLT's arguments, the clause does not impose such a requirement against continued use of pre-existing software.  Rather, it only states that the government will not "replace the equipment and/or software leased under this Order with functionally similar equipment and/or software."  The plain meaning of the word "replace" would require at the very least some action by the government following the termination of the contract.  *Craft Mach. Works, Inc. v. United States*, 926 F.2d 1110, 1113 (Fed. Cir. 1991) ("In contract interpretation, the plain and unambiguous meaning of a written agreement controls.").  The dictionary definition of the word "replace" requires substitution of one by another.  *See Metro. Area Transit, Inc. v. Nicholson*, 463 F.3d 1256, 1259 (Fed. Cir. 2006) (using dictionary definitions in contract interpretation).  As used in the contract before us, the proper definition of the word "replace" is "to put something new in the place of."  *Merriam-Webster's Online Dictionary*, http://www.merriam-webster.com/dictionary/replace (last visited September 21, 2010).  Here, OCHR took no action with regard to 24 of 26 of the pre-existing applications.  It did not replace them.

We are also not persuaded by the Board's conclusion that the software upgrade to the underlying Oracle software constituted a replacement of the DO29 software.

The Board found that the Oracle Federal HR software upgrade from version 10.7 to version 11i changed its functionality. In doing so, it relied on DLT's expert's opinion that the Oracle 11i upgrade made major improvements with regard to internet usability and self-service functionality. The Board held that this functionality upgrade was analogous to repair and reuse of existing computer equipment that the Claims Court held could constitute replacement.

Once again, we disagree with the Board on its broad interpretation of the contract term "replace." As a preliminary matter, the non-substitution clause here prohibits replacement of the DO29 software "for a period of one (1) year succeeding . . . termination." The upgrade at issue occurred between July and August 2003, well before OCHR had terminated the contract for convenience in March 2004. More importantly, the upgrade did not impact any core functionality of the pre-existing software. It merely changed two of the applications being used by OCHR from desktop-based to web-based. We do not agree that, under a proper interpretation of the contract, that change is substantial enough to be considered a replacement of the DO29 software suite.

In sum, in this case, the non-replacement clause was intended to preclude or discourage the government from cancelling the contract for its convenience, in order to substitute another product that functioned substantially the same way but appeared more advantageous or desirable to the government—perhaps because it would be cheaper. The government made no such replacement here, but instead simply continued using the DCPDS software it had already been using.

As the Board noted, the case law that it relied upon was not binding on it, nor is it binding on this court. To

the extent the two cited cases can be considered persuasive, we find them not applicable to the facts presented here. In *Municipal Leasing*, the Claims Court held that the Air Force had breached a non-substitution clause in a contract to lease computer terminals by refusing to renew the lease on the contracted-for equipment and instead repairing the computer terminals that it had used prior to the contract. The court found that the Air Force had considered the repair as an alternative prior to contracting with Municipal, and held that repairing the older malfunctioning terminals essentially replaced the contracted-for terminals. *Id.* Similarly, in *Northrop Grumman*, the GSBCA, relying on the Claims Court's *Municipal Leasing* decision, held that the General Services Administration ("GSA") violated a non-replacement clause in a lease for computer storage area network ("SAN") equipment by upgrading existing SAN equipment and not exercising its option to renew the lease with Northrop.

Unlike in *Municipal Leasing*, here, OCHR never stopped using its original software, never replaced it with the DO29 software, and never returned to using its original software following the contract termination. Nor was the original software a valid alternative that OCHR had previously considered for reaching the goal for which it leased the DO29 software. Even if the software upgrade were to be considered analogous to repair of malfunctioning equipment, the upgrade here was not carried out with an eye toward replacing the DO29 software. It is undisputed that OCHR had no control over the Oracle upgrades performed by the DoD. Furthermore, the upgrade was fairly insubstantial in comparison with the scope of the DO29 software. The Board found that only two of twenty-six applications received the upgrade. We agree with the government that such an insubstantial upgrade cannot

reasonably constitute a replacement of the contracted-for software. Moreover, it is undisputed that the contracted-for software was never intended to replace the DCPDS, merely to work with it. In other words, the two software suites, at least to some extent, provided functionality that may coexist with, rather than replace, each other.

As an alternate ground to uphold the Board's decision, DLT argues that the government also breached the contract by terminating for convenience when there was no change in circumstances that permitted such a termination under the terms of contract. According to DLT, given that OCHR still had the same needs as before, shifting the loss to DLT by terminating the contract for convenience was unjustified.

The government notes that DLT raised this argument before the Board, but the Board failed to address the issue directly. It suggests that by rejecting DLT's argument that the government in effect terminated the contract in bad faith, the Board in effect held that there were changed circumstances sufficient to support the termination for convenience. Therefore, the government contends that DLT, having lost the argument below and having failed to cross-appeal the Board's holding, cannot now raise that argument. According to the government, a holding by this court that there existed no change in circumstances to support a termination for convenience would be an expansion of the relief granted below. Moreover, it argues that the Board actually made multiple factual findings of changed circumstances that led OCHR to terminate the contract, including the fact that DoD declined to allow OCHR to interface the DO29 software with DCPDS. Finally, it contends that the issue of termination for convenience was settled by the parties and cannot be challenged further.

We agree with the government that it was entitled to terminate the contract for convenience. The Board specifically found that OCHR terminated the contract because, among other reasons, "it had an inadequate hardware platform on which to install and implement the DO29 software, [and] CPMS declined to authorize OCHR to interface the DO29 software with DCPDS." *Board Opinion* at 9. We find no error in the Board's factual findings, and, in light of those findings of changed circumstances, we conclude that the government was justified in utilizing the termination for convenience clause in terminating the contract, even if OCHR had prior knowledge that it might not be successful in deploying the contracted-for software. *See Caldwell & Santmyer, Inc. v. Glickman*, 55 F.3d 1578, 1583 (Fed. Cir. 1995) (refusing to disallow a termination for convenience in a "situation in which the government contracts in good faith but, at the same time, has knowledge of facts supposedly putting it on notice that, at some future date, it may be appropriate to terminate the contract for convenience").

## CONCLUSION

We have considered DLT's remaining arguments and do not find them persuasive. Accordingly, the judgment of the Board is

**REVERSED**