# In the United States Court of Federal Claims

No. 21-1900 C

Filed: October 31, 2025

Re-issued: January 26, 2026[1]

|  |  |
|---|---|
| PEANUT WAGON, INC., | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| *Defendant.* | ) |
| | ) |

*Kevin R. Garden*, The Garden Law Firm P.C., Alexandria, VA, for Plaintiff Peanut Wagon, Inc.

*Antonia R. Soares*, Senior Trial Counsel, United States Department of Justice, Civil Division, Washington, D.C., with whom was *Corinne A. Niosi*, Assistant Director, *Patricia M. McCarthy*, Director, and *Yaakov M. Roth*, Acting Assistant Attorney General, for Defendant. *Ryan J. Chance*, Attorney-Advisor, Department of the Interior, Office of the Solicitor, Division of Parks and Wildlife, *of counsel*.

## OPINION AND ORDER

Sometimes contracts do not play out like the parties hoped. Here, the parties hoped to have a profitable restaurant operating on a cliff overlooking the ocean. Things did not work out. The parties have since disputed what costs are owed under the contract. In an earlier decision, the court determined that many of the costs that the Plaintiff sought were not recoverable under the parties' contract. Because the Government did not dispute that certain costs may be recoverable, the court did not dismiss the claims as to those costs. Now the parties are back disputing the scope of those potentially recoverable costs. Based on the plain language of their contract, the court denies Plaintiff's motion for partial summary judgment and grants the Government's cross-motion for partial summary judgment.

## I. Background

Because the court provided a detailed summary of the factual background of this case in its last opinion, *Peanut Wagon, Inc. v. United States*, 167 Fed. Cl. 577 (2023), the court does not

---

[1] The court initially filed this opinion under seal and provided the parties an opportunity to propose appropriate redactions. Because the parties did not propose any redactions, the court re-issues this opinion without redaction.

repeat that summary here. Rather, the court provides only the background necessary to provide context for the narrow legal question before it today.

The Cliff House is a restaurant that sits on a cliff overlooking the Pacific Ocean near San Francisco, California. ECF No. 1 ¶ 4.[2] A restaurant has operated at the site since 1863. *Id.* ¶ 6. Demosthenis ("Dan") and Mary Hountalas incorporated Peanut Wagon, Inc. ("PWI") in 1974 to operate the Cliff House. *Id.* ¶ 8.[3] The United States acquired the Cliff House in 1977. ECF No. 12-1 at A196; *see also* ECF No. 1 ¶ 9 (alleging that the United States acquired the Cliff House in 1977). PWI operated the Cliff House under a series of contracts from 1977 until the parties' concession contract ended in 2020.

The court granted-in-part the Government's motion to dismiss. While that opinion dismissed much of the complaint, the portion alleging damages for the cost of installing a new heating, ventilation, and air conditioning ("HVAC") system survived. Following discovery, the parties now cross-move for partial summary judgment on the damages claimed for the HVAC system.

## II.     Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A dispute about a material fact is genuine if the evidence would permit a reasonable jury to return a verdict in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law," as opposed to "disputes that are irrelevant or unnecessary." *Id.* Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48.

As for the burden of proof, the moving party must demonstrate the absence of genuine issues of material fact. RCFC 56(c)(1). Here, both PWI and the Government have moved for partial summary judgment, so "[e]ach party carries the burden on its own motion to show entitlement to judgment as a matter of law after demonstrating the absence of any genuine disputes over material facts." *Massey v. Del Lab'ys, Inc.*, 118 F.3d 1568, 1573 (Fed. Cir. 1997). In resolving the cross-motions, the court cannot weigh the evidence and determine the truth of the matter. *See Anderson*, 477 U.S. at 249. Any evidence presented by the opponent is to be believed and all justifiable inferences are to be drawn in its favor. *Id.* at 225.

---

[2] When the court cites only the complaint, it is a paragraph that the Government admits is true in its answer. When the court also cites to a document in the record, it is to a document that the Government relies upon for the same proposition to establish that the alleged fact is not disputed. Although the court assumes these facts to be true, nothing in this opinion constitutes findings of fact.

[3] Mr. & Mrs. Hountalas began operating the Cliff House before they incorporated PWI. *See* ECF No. 1 ¶ 7.

## III.    Discussion

This dispute involves the amount of compensation that Peanut Wagon is entitled to for the installation of the HVAC system at the Cliff House.  The essence of the Parties' dispute at this stage is the scope of the contract term "original cost."  Although both parties argue the term "original cost" is unambiguous, they attribute irreconcilable meanings to that term.  PWI argues that "original cost" includes all costs that were necessary for the construction of the HVAC system, subject only to appropriate depreciation in accordance with Generally Accepted Accounting Principles ("GAAP").  ECF No. 36 at 7.  The Government argues that "original cost" is defined "as book value minus depreciation, with book value defined as the value of the asset as it appears on the concessioner's balance sheets."  ECF No. 42 at 15-16.

### A.    The contract is unambiguous.

Before turning to what the Parties dispute, note what the Parties agree upon.  First, the HVAC system is a "Concessioner Improvement[]"[4] that was made after the effective date of the contract.  Second, PWI held a "Possessory Interest"[5] in the HVAC system at the time the contract expired.  Finally, they do not dispute that the contract required the Government to pay PWI the "fair value" of the possessory interest in the concessioner improvements (i.e., the HVAC system) at the conclusion of the contract.  The dispute is narrow—what was the fair value of the HVAC system at the end of the contract?

The court begins "with the plain language of the written agreement." *McHugh v. DLT Sols., Inc.*, 618 F.3d 1375, 1380 (Fed. Cir. 2010) (citing *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996)).  The court gives "clear and unambiguous" contract terms "their plain and ordinary meaning." *McAbee Const., Inc.*, 97 F.3d at 1435 (quoting *Alaska Lumber & Pulp Co. v. Madigan*, 2 F.3d 389, 392 (Fed. Cir. 1993)).  And if the provisions of the contract are unambiguous, "the court may not resort to extrinsic evidence to interpret them." *McAbee Const., Inc.*, 97 F.3d at 1435 (citing *Interwest Constr. v. Brown*, 29 F.3d 611, 615 (Fed. Cir. 1994)).  Accordingly, the court turns to Section 13(b)(3) and examines that provision's use of the term "original cost":

> The fair value of Possessory Interest in Concessioner
> Improvements and Government Improvements made after the
> effective date of this CONTRACT shall be . . . the *original cost* of
> the improvements less straight line depreciation over the estimated

---

[4] "Concessioner Improvement . . . means buildings, structures, fixtures, equipment, and other improvements, affixed to or resting upon the lands assigned hereunder in such manner as to be a part of the realty, provided by the Concessioner for the purposes of this CONTRACT (excluding improvements made to Government Improvements and improvements made from funds in any Section 10 accounts)[.]"  ECF No. 36-1 at App. 12 (Contract § 6(a)(1)).

[5] "Possessory Interest, as the term is used in this CONTRACT, shall consist of all incidents of ownership in capital improvements made by the Concessioner, except legal title which shall be vested in the United States and subject to other limitations as set forth in this CONTRACT."  ECF No. 36-1 at App. 13 (Contract § 6(b)(3)).

> useful life of the asset according to Generally Accepted
> Accounting Principles, provided, however, that in no event shall
> any such useful life exceed 30 years.

ECF No. 36-1 at App. 24 (emphasis added). Based on this provision, one must begin with the "original cost" of a Concessioner Improvement and then depreciate that amount using a straight-line method. Thus, the first step is to determine what the term "original cost" means.

The Government consults myriad legal and accounting dictionaries to define "original cost." *See* ECF No. 42 at 18-19. In one such dictionary, "original cost" is "[t]he cost of an item at the time of purchase or creation[,]" and "applies particularly to fixed assets in which depreciation by the straight-line method uses the original cost as a basis for the calculation." *A Dictionary of Business and Management* (6th ed. 2016), filed as ECF No. 42-1 at DAppx008. This definition mirrors the description of original cost in the Section 13(b)(3) of the Contract; the "fixed asset" being the improvements made to the HVAC system with the "straight-line method" of depreciation applied, under GAAP. ECF No. 36-1 at App. 24.

This dictionary also points to "historical cost" to define "original cost." ECF No. 42-1 at DAppx008. In fact, other dictionaries define "original cost" as synonymous with "historical cost." *See* "Cost," Black's Law Dictionary (12th ed. 2024), filed as ECF No. 42-1 at DAppx013. And "original cost" and "historical cost" are often based on "book value." ECF No. 42 at 19 (citing Stacey L. Bowers, *Accounting and Corporate Finance for Lawyers* 65 (2d ed. 2023), filed as ECF No. 42-1 at DAppx011). Book value is "the value at which an asset is carried on a balance sheet." "Book Value," Black's Law Dictionary (12th ed. 2024), filed as ECF No. 42-1 at DAppx012. And the balance sheets "present information about assets, liabilities, and owners' equity . . . ." ECF No. 42 at 19 (citing Joanne M. Flood, *Practitioner's Guide to GAAP 2023: Interpretation and Application of Generally Accepted Accounting Principles* 40 (1st ed. 2022), filed as ECF No. 42-1 at DAppx030). In other words, book value reflects PWI's balance sheet, which contains the relevant information regarding the cost of the HVAC system. The Government does not maintain "original cost" is exactly the same as "book value," but "'book value' is defined as 'original cost' minus depreciation." ECF No. 45 at 3. Its interpretation is consistent with the dictionaries and authorities cited.

The dictionary cited by PWI does not alter this conclusion. PWI contends its definition of "original cost" is supported by the sixth edition of Black's Law Dictionary (which was in effect in 1998 when the parties executed the Contract), and argues this dictionary outlines the "plain" or "simple" definition of "original cost": "Total of all costs associated with the acquisition of an asset." ECF No. 43 at 2 (citing ECF No. 43-1 at App. 88). But that same edition of Black's Law Dictionary also defines "original cost" as a synonym of "historical cost" and "acquisition cost." ECF No. 43-1 at App. 87. It then states that "[b]ook value is based on the historical cost of an asset." ECF No. 45-1 at DAppx213. Accordingly, the sixth edition of Black's Law Dictionary supports the Government's interpretation of "original cost"; it is "synonymous with 'historical cost' and 'acquisition cost,' and . . . 'original cost' is based on 'book value.'" ECF No. 45 at 4. The court cannot ignore pertinent information regarding the understanding of the plain meaning of "original cost" in the very dictionary cited by PWI. Accordingly, the dictionaries cited by the parties point to one plain meaning of the term "original cost"—synonymous with historical cost as the book value of an asset.

More importantly, the contract itself supports the Government's interpretation. Recall that Section 13(b)(3) defines "fair value" to be "the original cost of the improvements less straight line depreciation over the estimated useful life of the asset *according to Generally Accepted Accounting Principles*." ECF No. 36-1 at App. 24 (emphasis added). The Government argues that GAAP applies to both the "original cost" and the depreciation, which supports the view that original cost equates to historical cost. ECF No. 42 at 21. Its interpretation, that "fair value" is based on "'original cost' minus depreciation," (what they point out is akin to "book value") is consistent with the language of Section 13(b)(3) as a whole. ECF No. 45 at 3.

GAAP "are the official standards adopted by the American Institute of Certified Public Accountants ('AICPA'), such as AICPA Accounting Research Bulletins, Accounting Principles Board ('APB') Opinions, and Financial Accounting Standards Board ('FASB') Statements and Interpretations." *Coast Federal Bank, FSB v. United States*, 323 F.3d 1035, 1038 (Fed. Cir. 2003) (en banc) (citing Donald E. Kieso et al., *Intermediate Accounting* 14-15 (10th ed. 2001)). The FASB promulgates the Accounting Standards Codification ("ASC"). *See United States v. Winstar Corp.*, 518 U.S. 839, 855 (1996). And, more specifically, ASC 853 governs "Service Concession Arrangements." ECF No. 42-1 at DAppx028. Under GAAP, "[e]ntities use historical cost to value property, plant, and equipment." ECF No. 39-1 at DAppx208-09 (citing ASC 360-10-30-1). GAAP states "[u]pon acquisition, the reporting entity should measure and capitalize all the historical costs necessary to deliver the asset to its intended location and prepare it for its productive use." *Id.* Thus, under GAAP, reporting entities like PWI should record the book value or historical cost of an asset upon its acquisition.

Indeed, PWI's own accounting documents reflect its contemporaneous understanding that GAAP would apply to both the "original cost" and the depreciation. In its annual financial statements, which it submitted to the Government under the contract, PWI expressly relied upon ASC 853 governing "Service Concession Arrangements." Decl. of David Smith ¶ 4, ECF No. 42-1 at DAppx039. These documents reflect PWI's understanding that the "book value" would govern its possessory interest: "The book value of the possessory interest at the end of the lease term in 2018[6] will be paid back to the Company by the NPS[.]" Smith Decl. ¶ 3, ECF No. 42-1 at DAppx038-39. This contemporaneous understanding that GAAP applied to the determination of the original cost as well as depreciation is inconsistent with PWI's current argument.

The amendments to the standard concession contract (which includes the contract here), further support the Government's interpretation. NPS "adopted this contract provision as part of its standard contract language instead of the sound value approach for determining possessory interest." ECF No. 42 at 7 (citing *Final Revision of National Park Service Standard Concession Contract*, 58 Fed. Reg. 3140, 3142-44 (Jan. 7, 1993)). As NPS explained,

> Under the old standard contract, a concessioner is entitled to
> receive compensation for possessory interest in capital
> improvements it makes either in the amount of the "sound value"
> of the improvement or the book value of the improvement,
> depending on the circumstances. Sound value . . . is defined

---

[6] As detailed in the court's prior opinion, the parties extended the contract's performance through 2020. *Peanut Wagon*, 167 Fed. Cl. at 583.

generally as "reconstruction cost less depreciation," but "not to exceed fair market value."

*Final Revision of National Park Service Standard Concession Contract*, 58 Fed. Reg. at 3143. It was this method of calculating the concessioner's compensation that NPS abandoned with the revised standard contract:

> The major difference in possessory interest compensation between the old and the new standard contract is that the new standard contract generally provides for a redefined "fair value" possessory interest compensation instead of sound value. (The new standard contract also changes book value to fair value in most circumstances but this is a technical change for consistency purposes as fair value, except for possible differences in depreciation schedules, generally equates to book value.)

*Id.* The NPS's explanation of the standard contract language mirrors the Government's current position. It distinguishes the prior "sound value" approach from the adoption and implementation of the "fair value" and "book value" method of calculation. NPS explained they favored the new "fair value" approach over the prior "sound value" approach, further supporting the Government's interpretation of Section 13(b)(3) of the Contract.

PWI's argument that GAAP is of no assistance when considering the meaning of "original cost" does not fit the language of the contract (or its own contemporaneous understanding of the contract). According to PWI, GAAP only informs how to depreciate an asset but does nothing to inform the original cost. ECF No. 36 at 9. But PWI fails to explain how one would depreciate something in accordance with GAAP if the thing itself is not depreciable under GAAP. Among the things GAAP does is identify depreciable assets and set how long an entity may depreciate such an asset. For example, certain expenses may not be depreciable at all, some may depreciate over a few years, while others may depreciate over more years. *See, e.g.*, ECF No. 39-1 at A139 (table of improvements with 10- or 30-year depreciation). PWI's argument begs the question—if something is not depreciable under GAAP, how does one determine how long to depreciate it under GAAP?

Nor is PWI's limitation on the application of GAAP saved by the fact that the standard contract uses the term "original cost" rather than "historical cost." According to PWI, the parties used "historical cost" when they wanted GAAP to apply and "original cost" when they did not— i.e., when they intended a value based on all the actual costs to acquire an asset. ECF No. 43 at 5. And so, PWI argues, the use of "original cost" rather than "historical cost" indicates the Government's intention that GAAP not apply to the valuation of the HVAC system. *Id.* at 5-6. But as NPS explained in the Federal Register, "book value" and "fair value"—the depreciated "original cost" of an asset—are generally synonymous, with the only difference being depreciation schedules. *Final Revision of National Park Service Standard Concession Contract*, 58 Fed. Reg. at 3143.

PWI next relies on the provision in the Contract that states the Government "is required to exercise [its] authority hereunder in a manner consistent with a reasonable opportunity by the

Concessioner to realize a profit on the operations conducted hereunder as a whole commensurate with the capital invested and the obligations assumed." ECF No. 36-1 at App. 4. PWI argues that this clause "demonstrates that the Government has an obligation to interpret the Contract terms in a manner consistent with PWI's ability to realize a profit on its obligations under the Contract." ECF No. 36 at 9. PWI contends this provision supports its broader interpretation of "original cost" to enable PWI to realize a profit. *Id.* Not so. The Agency has an obligation to "exercise its authority" in a certain way, that does not mean that the Agency or the court should interpret the contract to mean something other than what it says. And the court already rejected PWI's theory that the Contract ensures it an ability to profit:

> [T]he Contract provides for the "full and just compensation to the Concessioner from the Secretary *for all losses and claims* occasioned by the circumstances discussed [therein]." And nothing in the Contract guarantees that PWI will make a profit under it. *Nat'l Parks & Conservation Ass'n v. Kleppe*, 547 F.2d 673, 684 (D.C. Cir. 1976) ("Subsection 20b(b) does not guarantee a profit; in fact, many park concessioners apparently lose money."). As the Government explains, "even if a concessioner does not realize a profit on its operations, its investment in capital improvements remains protected through the Government's payment of possessory interest[.]"

*Peanut Wagon,* 167 Fed. Cl. at 604 (internal citations omitted).

Because the Contract is unambiguous, several of PWI's arguments fail. First, PWI's argument that the court should apply *contra proferentem* to interpret the Contract against the Government relies on a latent ambiguity. *Gardiner, Kamya & Assocs., P.C. v. Jackson*, 467 F.3d 1348, 1353 (Fed. Cir. 2006) ("[B]efore turning to the doctrine of contra proferentem, we must determine whether the language of the contract itself answers the question . . . ."). This case is also not a great fit for *contra proferentem* given that NPS made its interpretation known—published in the Federal Register—years before the Contract here. Any argument that the Agency's interpretation of the contract was unknown or latent Second, the reliance on extrinsic evidence, e.g., PWI's reliance on *The Appraisal of Real Estate* (15th ed. 2020), is misplaced. The court may not turn to extrinsic evidence when the Contract is unambiguous. *McAbee Constr., Inc.*, 97 F.3d at 1435 (citing *Interwest Constr.*, 29 F.3d at 615). The court has found the Contract is not ambiguous. Accordingly, the court may not rely on extrinsic evidence.

### B. PWI is not entitled to the various indirect costs it claims, but it may be entitled to financing costs.

Having determined that "original cost" includes those depreciated according to GAAP, the court must now turn to whether the various expenses that PWI seeks are recoverable under the Contract.

1. General and Administrative Costs

PWI claims it is entitled to general and administrative ("G&A") costs based on the terms of the Contract. ECF No. 36 at 18-20. PWI details these "indirect costs" as "payroll administration, salaries and benefits paid to its employees, insurance costs, office supplies, outside security services and costs to maintain the facility while the HVAC project was occurring." *Id.* at 18 (citing ECF No. 36-1 at App. 76). But, as the court explains above, "original cost" is synonymous with "historical cost" and is based on "book value"—the value at which an asset is carried on a balance sheet. G&A costs do not appear on a balance sheet, but rather on the income statement as indirect expense. *See* ECF No. 42 at 31. According to the ASC, only costs that are "directly identifiable with the specific property," here, the HVAC system, should be capitalized and depreciated. ASC 970-340-25-3; ECF No. 42-1 at DAppx020. G&A costs fall outside the scope of costs permissible under GAAP, and therefore outside the scope of "original cost" under the contract.

### 2. Accounting Costs

Similarly, PWI contends Section 13(b)(3) of the Contract entitles it to accounting costs incurred as an indirect cost in the HVAC construction. ECF No. 36 at 14-16. According to PWI, it "had to engage its outside accountant to perform additional services to ensure that PWI would be able to properly document and account for the costs it was incurring to construct the HVAC Project in order to be compensated for those costs by the National Park Service." *Id.* at 14. For the same reasons discussed above, including such indirect accounting costs would be inconsistent with the plain meaning of "original cost."

### 3. Entrepreneurial Incentive

Next, PWI seeks to recover an "entrepreneurial incentive," which it defines as "the amount of compensation needed for a party to assume the risk of any construction project." ECF No. 36 at 24 (citations omitted). PWI argues because it incurred the cost of the entrepreneurial incentive, those costs fall under the "original cost" of the HVAC system. *Id*. PWI relies on *The Appraisal of Real Estate* to support this claim. Here too the court cannot examine extrinsic evidence in the case of an unambiguous contract. *McAbee Constr., Inc.*, 97 F.3d at 1435. Because PWI's argument regarding an unambiguous contract relies on extrinsic evidence, it fails.

### 4. Legal costs

PWI contends that it is entitled to legal costs it incurred starting in 2016 when the prior HVAC system began to fail until the completion of the project. ECF No. 36 at 16-17 (citing ECF No. 36-1 at App. 80-81). PWI claims these legal costs would not have been needed but for the HVAC project, and accordingly should be included in the "original cost" of the HVAC. *See id.* at 17.

In its submission of its Annual Financial Statements to NPS, PWI was to include all claims for possessory interest eligible costs for the HVAC system. In those filings, PWI included none of the costs that it now seeks. *See* ECF No. 12-1 at App. 40; 49-52; 87-90; 126-28. Although the Government made this argument in its cross-motion, PWI failed to address it in its reply brief. "As courts have long recognized, '[a] reply brief . . . can waive an argument by failing to respond to the opposing party's *counterarguments* or *new arguments* raised in the

response brief.'" *Superior Waste Mgmt. LLC v. United States*, 169 Fed. Cl. 239, 296 (2024) (emphasis in original) (quoting *Kyles v. Beaugard*, No. 15-cv-8895, 2023 WL 5277882, at *21 (N.D. Ill. Aug. 16, 2023)).  Accordingly, PWI is not entitled to the "legal costs" it claims because they are outside the scope of "original cost" in Section 13(b)(3).

### 5. Financing costs

Finally, the Government concedes that PWI "may be entitled to financing costs until the HVAC system's November 2020 in-service date."  ECF No. 42 at 37.  The Government further states that discovery is necessary to determine whether PWI is so entitled to such costs, and to what extent.  *Id.*  For its part, PWI did not address the Government's position regarding the November 2020 in-service date.  Accordingly, the court concludes that PWI may be entitled to financing costs incurred until the HVAC system's November 2020 in-service date pending further discovery on that issue.

## IV.    Conclusion

For the reasons stated, the court **DENIES** the Plaintiff's motion for partial summary judgment, ECF No. 36, and **GRANTS** the Government's cross-motion for partial summary judgment, ECF No. 39.

It is so ORDERED.

s/ Edward H. Meyers
Edward H. Meyers
Judge