ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| AICI-Archirodon JV | ) ASBCA No. 62201 |
| | ) |
| Under Contract No. W912ER-17-C-0014 | ) |

APPEARANCES FOR THE APPELLANT:  Scott M. Heimberg, Esq.
Thomas P. McLish, Esq.
Amanda B. Lowe, Esq.
  Akin Gump Strauss Hauer & Feld LLP
  Washington, DC

APPEARANCES FOR THE GOVERNMENT:  Michael P. Goodman, Esq.
  Engineer Chief Trial Attorney
Rebecca L. Bockmann, Esq.
James D. Stephens, Esq.
  Engineer Trial Attorneys
  U.S. Army Engineer District, Middle East
  Winchester, VA

OPINION BY ADMINISTRATIVE JUDGE OSTERHOUT
ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

This appeal involves a contract to replace the Mina Salman Pier in Manama, Bahrain. The contract required appellant to use United States-flagged vessels to transport materials unless it applied for and was granted an exception to use a foreign-flag vessel. The government moves for summary judgment, arguing that appellant failed to properly request an exception and failed to follow the contract by using a foreign-flagged vessel.[1] Appellant cross-moves for summary judgment, alleging that it properly filed a request for exception but the contracting officer failed to respond in a timely manner, and that no harm occurred to the government. We grant the government's motion, in part, regarding appellant's failure to properly request an exception and follow the requirements of the

_____

[1] The government also filed a motion *in limine* to exclude appellant's expert testimony and report. The government argued that the Board should shield the record from the introduction of irrelevant, immaterial, or cumulative matters and that the expert's opinion included legal conclusions (gov't mot. at 1, 14). Based on this decision, the risk of appellant's expert report being irrelevant, immaterial, or cumulative is low. Further, the Board is capable of giving the report and potential testimony the proper weight it deserves. Thus, the government's motion *in limine* is denied.

contract. We deny the government's motion as to the amount. Similarly, we deny appellant's motion, in part, regarding entitlement but grant appellant's motion, in part, concerning the inability to determine the amount based on the record.

### STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTIONS

1. On September 25, 2017, the United States Army Corps of Engineers (USACE or the government) awarded Contract No. W912ER-17-C-0014 (the contract) to AICI-Archirodon JV (AAJV or appellant) to replace the Mina Salman Pier at Naval Support Activity, Manama, Bahrain, at the firm-fixed-price of $48,148,000 (R4, tab 4 at 1-2).

2. The contract incorporated by reference Defense FAR Supplement (DFARS) 252.247-7023, TRANSPORTATION OF SUPPLIES BY SEA (APR 2014) (R4, tab 4 at 14). The clause stated, in part, "(b)(1) The Contractor shall use U.S.-flag vessels when transporting any supplies by sea under this contract." Further, the clause allowed for exceptions to this requirement and provided a method by which the contractor could request to use a foreign-flag vessel from the contracting officer (CO):

> (c) The Contractor and its subcontractors may request that the Contracting Officer authorize shipment in foreign-flag vessels, or designate available U.S.-flag vessels, if the Contractor or a subcontractor believes that—
>
> (1) U.S.-flag vessels are not available for timely shipment;
>
> (2) The freight charges are inordinately excessive or unreasonable; or
>
> (3) Freight charges are higher than charges to private persons for transportation of like goods.
>
> (d) The Contractor must submit any request for use of foreign-flag vessels in writing to the Contracting Officer at least 45 days prior to the sailing date necessary to meet its delivery schedules. The Contracting Officer will process requests submitted after such date(s) as expeditiously as possible, but the Contracting Officer's failure to grant approvals to meet the shipper's sailing date will not of itself constitute a compensable delay under this or any other clause of this contract. Requests shall contain at a minimum—

(1) Type, weight, and cube of cargo;

(2) Required shipping date;

(3) Special handling and discharge requirements;

(4) Loading and discharge points;

(5) Name of shipper and consignee;

(6) Prime contract number; and

(7) A documented description of efforts made to secure U.S.-flag vessels, including points of contact (with names and telephone numbers) with at least two U.S.-flag carriers contacted. Copies of telephone notes, telegraphic and facsimile message or letters will be sufficient for this purpose.

(g) In the event there has been unauthorized use of foreign-flag vessels in the performance of this contract, the Contracting Officer is entitled to equitably adjust the contract, based on the unauthorized use.

DFARS 252.247-7023. Before the exemption is issued, the CO "must, by regulation, seek the advice of one of the military transport commands regarding the U.S.-flag vessel availability." The Navy's Military Sealift Command (MSC) provides formal advice on the availability of U.S.-flag vessels for voyage and time charters. MSC will then "consult with the Maritime Administration (MARAD) to ensure that 100% U.S.-flag service is not available and that U.S. flag vessels are being used to their fullest extent." (R4, tab 06A at 2) We find that the 45-day notice requirement is reasonable, given the coordination with multiple governmental agencies in order to provide the CO the necessary advice as to the availability of U.S. flag vessels or if the rates quoted to a contractor are excessive or otherwise unreasonable.

3. By letter dated August 30, 2018, addressed to the CO's representative (COR), appellant formally requested to use a foreign-flag vessel to ship steel piles for the project (R4, tab 6 at 1). Appellant proposed a shipping date range from September 25, 2018 through October 15, 2018 (*id.* at 2). Appellant listed the required information pursuant to DFARS 252.247-7023 (*id.* at 1-2). For item no. 7, appellant included a list of requirements for the shipment but did not document a description of efforts made to hire a U.S-flag vessel, did not provide points of contacts and telephone numbers of at least two U.S-flag carriers contacted, and did not provide any copies of

3

notes or letters to demonstrate contact with U.S.-flag vessels (*id*. at 2). The attachments contained emails discussing the availability of vessels but the ones addressing U.S.-flag vessels were dated August 28, 2018, or later (*id*. at 6, 10-16; *see also* app. supp. R4, tab 8A-1). The only quoted price for a U.S.-flag vessel that appellant presented to the CO was $1,384,220 (R4, tab 2 at 4).

4. On September 9, 2018, the CO denied appellant's request to use a foreign-flag vessel. The CO stated that appellant failed to make the request 45 days prior to the sailing date and that appellant only provided supporting documentation dated August 28, 2018, or later, which indicated to the CO that appellant did not make a reasonable effort to find a U.S.-flag vessel in a reasonable time. (R4, tab 7)

5. On September 18, 2018, appellant responded that it was not feasible to provide 45 days of notice and provided information about the foreign-flag vessel it had scheduled to use (R4, tab 8). Appellant stated that it started looking for U.S.-flag vessels in May 2018 and provided an email to demonstrate the search (*id*. at 21). The May 2018 email asked for quotes but the only reference to U.S.-flag vessels was a single parenthetical: "(if us flag is not available please quote for the standard)" (*id*.). No other conversations about U.S.-flag vessels from May 2018 were provided. Appellant also advised "the delivery of piles is on the critical path and any further delay will negatively affect the Project completion date." Thus, appellant indicated that it was going to proceed with the steel piles transport using a foreign-flagged vessel. (R4, tab 8)

6. On September 20, 2018, the COR responded that the government received appellant's letter stating the intention to use a foreign-flag vessel without approval. The COR also referenced the contract requirement to use U.S.-flag vessels and cited DFARS 252.247-7023. Additionally, the COR informed appellant that because the request was disapproved due to lack of timeliness and insufficient supporting documentation, the CO could equitably adjust the contract if a foreign-flag vessel was used. Finally, the COR reminded appellant that these requirements also applied to subcontractors. The COR included a full-text version of the clause as an attachment. (R4, tab 9 at 1-2)

7. On September 21, 2018, the CO supplemented the COR's September 20, 2018 letter, informing appellant that while appellant's intent to proceed with a foreign-flag vessel was in violation of the contract and that insufficient evidence was provided to substantiate the request, the CO would submit the request through the appropriate channels. The CO stated, "[u]nless and until approved, any shipment not using a U.S.

flagged vessel is an unauthorized shipment and any goods included in that shipment may be rejected by the Government or the contract otherwise adjusted to account for the non-compliance with the requirement, as indicated in serial letter C-0021." (R4, tab 10)

8. On October 10, 2018, appellant shipped the piles via a foreign-flag vessel (compl. at 5).

9. On November 9, 2018, the CO sent appellant a letter stating that she had forwarded appellant's request but that MSC would not consider the request because appellant proceeded with a non-U.S.-flag vessel before MSC made a decision. The CO notified appellant that the decision to use a foreign-flag vessel violated the contract and that the government would "take authorized and appropriate action in response to the violation." (R4, tab 11)

10. On December 12, 2018, the CO informed appellant that she would equitably adjust the contract for the difference in price between the cost of shipping via the U.S.-flag vessel appellant quoted and the foreign-flag vessel appellant used. The CO asked appellant to respond no later than December 21, 2018. (R4, tab 12)

11. On December 19, 2018, appellant responded that it had to ship with a foreign-flag vessel because of time constraints on the contract and because a U.S.-flag vessel was five times the cost of the foreign-flag vessel (R4, tab 13 at 1-2).

12. On April 9, 2019, the CO sent appellant a letter stating that the government planned to reduce the amount of the contract by $1,384,220 to reflect the price of the U.S.-flag vessel quoted in appellant's August 30, 2018 request (R4, tab 14 at 2). However, the CO offered to decrease the reduction to the difference between that quote and the price appellant paid for the foreign-flag vessel—$1,107,376—if appellant signed and returned an attached modification by April 15, 2019 (*id.* at 3).

13. On April 13, 2019, appellant responded and asked the CO to reconsider the downward adjustment, and did not sign the modification (R4, tab 15 at 1-3).

14. On April 16, 2019, the CO issued unilateral Modification No. P00009 which decreased the price of the contract by $1,384,220, which was the subject matter of appellant's claim and appeal. In the modification, the CO stated, "[t]he adjusted price reflects the cost represented by AICI/Archirodon JV to ship these specific materials in accordance with DFARS 252.247-2023, a total of $1,384,220. The Government has elected not to increase the adjustment by assessing penalties or applying the contractor's indirect rates." (R4, tab 5 at 1-2)

<u>DECISION</u>

*The Parties' Contentions*

The government argued that appellant failed to comply with the contract by using a foreign-flag vessel without authorization, and thus the government was entitled to equitably adjust the contract price by the amount appellant saved by violating the contract (gov't mot. at 1). Appellant argued that it properly requested approval to use a foreign-flag vessel, that the government's CO failed to respond to its request in a timely manner, and that the government was not harmed as a result of appellant's use of a foreign-flag vessel. Thus, according to appellant, reduction of the contract price was inappropriate. (App. mot. at 3)

*Standard of Review*

Summary judgment is proper when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). A fact is material if it may affect the outcome of the decision. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The movant bears the burden of establishing the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 322. Regardless of the type of claim being raised, the applicable substantive law determines which facts are material and thus preclude an entry of summary judgment. *Liberty Lobby*, 477 U.S. at 248. Such facts must be viewed in the light most favorable to the non-moving party. *Id*. at 255; *C. Sanchez and Son, Inc. v. United States*, 6 F.3d 1539, 1541 (Fed. Cir. 1993). However, the non-movant must set forth specific facts demonstrating the existence of a genuine issue of material fact; mere conclusory statements and bare assertions are inadequate. *Mingus*, 812 F.2d at 1390-91; *Liberty Lobby*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [non-movant]'s position will be insufficient . . . ."). Our responsibility is not "'to weigh the evidence and determine the truth of the matter,' but rather to ascertain whether material facts are disputed and whether there exists any genuine issue for trial." *Holmes & Narver Constructors, Inc.*, ASBCA Nos. 52429, 52551, 02-1 BCA ¶ 31,849 at 157,393 (quoting *Liberty Lobby*, 477 U.S. at 249).

*Appellant Failed to Comply with Contract's Unambiguous Terms*

The government argued that appellant violated DFARS 252.247-7023's unambiguous terms by shipping the steel piles via foreign-flag vessel (gov't mot. at 35). A contract is ambiguous if it is reasonably susceptible to more than one interpretation. *Edward R. Marden Corp. v. United States*, 803 F.2d 701, 705 (Fed. Cir. 1986). The Board must look to the plain language of the contract to determine if it is ambiguous. *American Int'l Contractors, Inc.*, ASBCA Nos. 60948, 61166, 18-1 BCA ¶ 37,061

6

at 180,411. If the contract's terms are clear and unambiguous, they must be given their plain and ordinary meaning. *Alaska Lumber & Pulp Co. v. Madigan*, 2 F.3d 389, 392 (Fed. Cir. 1993). The Board may not use extrinsic evidence to "introduce an ambiguity where none exists." *Interwest Constr. v. Brown*, 29 F.3d 611, 615 (Fed. Cir. 1994); *see also American Int'l Contractors*, 18-1 BCA ¶ 37,061 at 180,411.

Here, the contract incorporated DFARS 252.247-7023. The plain language of the clause required that appellant "use U.S.-flag vessels when transporting any supplies by sea under this contract." The clause provided exceptions to this requirement—including both lack of availability of U.S.-flag vessels and excessive costs—with proper authorization from the CO. The clause also explicitly entitled the CO to "equitably adjust the contract, based on the unauthorized use" if a foreign-flag vessel was used without prior approval. (SOF ¶ 2)

The clause required a contractor to submit a written request to the CO at least 45 days prior to the shipping date before using a foreign-flag vessel (SOF ¶ 2). On August 30, 2018, appellant submitted such a request, which the CO denied on September 9, 2018 (SOF ¶¶ 3-4). After appellant subsequently notified the CO of its intention to use a foreign-flag vessel without approval, the CO informed appellant that "[u]nless and until approved, any shipment not using a U.S. flagged vessel is an unauthorized shipment and any goods included in that shipment may be rejected by the Government or the contract otherwise adjusted to account for the non-compliance with the requirement . . . ." (SOF ¶ 7). Moreover, DFARS 252.247-7023(d) provided that "the Contracting Officer's failure to grant approvals to meet the shipper's sailing date will not of itself constitute a compensable delay under this or any other clause of this contract" (SOF ¶ 2). It is therefore undisputed that when appellant shipped the steel piles on October 10, 2018, via a foreign-flag vessel (SOF ¶ 8), it did so without the CO's authorization, and thus violated the terms of the contract.

*The CO's Denial of Appellant's Request to use a Foreign-Flag Vessel was Proper*

Since the undisputed facts show that appellant violated the contract by shipping the steel piles via a foreign-flag vessel without the CO's approval, our decision turns on whether the CO's denial of appellant's request to use a foreign-flag vessel was proper. Appellant contended that the CO should have granted its request to use a foreign-flag vessel because no suitable U.S.-flag vessel was available to transport the steel piles at a reasonable cost at the time it needed to ship them (app. mot. at 14-16). However, as the government argued, even if the CO erred in denying appellant's request, appellant must prove that her decision amounted to an abuse of discretion in order for its claim to have merit. *See Empire Energy Management Systems*, *Inc.*, ASBCA No. 46741, 03-1 BCA ¶ 32,079 at 158,553. When reviewing a CO's discretionary action, the Board may not substitute its own judgment for that of the CO; rather, the Board may only review the decision to determine whether the CO's action

7

amounts to an abuse of discretion or is otherwise arbitrary and capricious. *Id*. This assessment requires an evaluation of four factors: (1) whether the CO acted in bad faith; (2) whether the CO had a reasonable, contract-related basis for the decision; (3) whether the CO overreached the amount of discretion accorded to her; and (4) whether the CO violated any relevant statutes and/or regulations so as to render the decision arbitrary and capricious. *Id*.; *Raytheon Co.*, ASBCA No. 57743 *et al.*, 17-1 BCA ¶ 36,724 at 178,854.

The first question is whether the CO acted in bad faith. Government officials are strongly presumed to carry out their duties in good faith; every contract imposes upon each party a covenant of good faith and fair dealing in its performance and enforcement. *Metcalf Constr. Co. v. United States*, 742 F.3d 984, 990 (Fed. Cir. 2014). However, this implicit duty "cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions." *Id.* at 991 (quoting *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 831 (Fed. Cir. 2010)). The proper inquiry regarding the duty of good faith and fair dealing "boils down to questions of 'reasonableness' of the government's actions." *Relyant, LLC*, ASBCA No. 59809, 18-1 BCA ¶ 35,085 at 180,539, *aff'd on recon*. 18-1 BCA ¶ 37,146. Appellant has not presented any evidence that the CO, nor any other government representative, acted unreasonably.

Regarding the second factor, appellant must establish that the CO did not have a reasonable, contract-related basis for denying appellant's request to use a foreign-flag vessel. *Raytheon*, 17-1 BCA ¶ 36,724 at 178,854. Appellant alleged that its August 30, 2018 request to use a foreign-flag vessel was proper under DFARS 252.247-7023 (app. mot. at 7-8). DFARS 252.247-7023 required that a contractor requesting to use a foreign-flag vessel submit to the CO, among other items, "[a] documented description of efforts made to secure U.S.-flag vessels, including points of contact (with names and telephone numbers) with at least two U.S.-flag carriers contacted" (SOF ¶ 2). While appellant included a list of requirements for the shipment with its request, it failed to provide a description of any efforts made to hire a U.S-flag vessel, points of contacts or telephone numbers of at least two U.S-flag carriers it contacted, and copies of notes or letters to demonstrate contact with U.S.-flag vessels (SOF ¶ 3). Furthermore, the clause required that the contractor submit its request at least 45 days before its proposed shipping date (SOF ¶ 2). Appellant submitted its request just 26 days before September 25, 2018—the earliest of its proposed shipping dates (*see* SOF ¶ 3). Moreover, appellant informed the CO on September 18, 2018, that it was proceeding with the shipment using a foreign flag vessel, in clear violation of the contract (SOF ¶ 5). Because appellant's August 30 request did not include all of the required information under DFARS 252.247-7032(d), was not timely submitted, and was subsequently rendered obsolete by its unilateral action, we conclude that appellant has failed to demonstrate that the CO lacked a valid, contract-related basis for denying the request.

Turning to the third element, we must consider the amount of discretion vested in the CO under the contract. *Raytheon*, 17-1 BCA ¶ 36,724 at 178,854. Under the terms of the contract, the CO was the only person with the authority to approve or deny a request from appellant to use a foreign-flag vessel (SOF ¶ 2). Using this authority, the CO denied appellant's initial request to use a foreign-flag vessel to ship the steel piles, and reaffirmed her denial when appellant informed her it intended to proceed with using a foreign-flag vessel anyway (SOF ¶¶ 4, 6). Appellant presented no evidence alleging that the CO exceeded her authority in doing so.

Finally, the Board must determine whether the CO violated any relevant statutes or regulations that would render her denial of appellant's request arbitrary and capricious. *Raytheon*, 17-1 BCA ¶ 36,724 at 178,854. In order for a contractor to successfully bring a claim against the government for violating a regulation, that regulation must exist for the benefit of the contractor—not the government. *Parsons Evergreene, LLC*, ASBCA No. 61784, 18-1 BCA ¶ 37,135 at 180,725 (citing *Freightliner Corp. v. Caldera*, 225 F.3d 1361, 1365 (Fed. Cir. 2000); *Cessna Aircraft Co. v. Dalton*, 126 F.3d 1442, 1451 (Fed. Cir. 1997); *Rough Diamond Co. v. United States,* 351 F.2d 636, 640-42 (Ct. Cl. 1965)). Therefore, even if the CO violated a regulation, a contractor does not have a cause of action against the government if the regulation exists for the government's benefit. *See Cessna*, 126 F.3d at 1451. While a regulation may benefit both the government and the contractor in practice, "the operative test is not that application of the regulation merely be to the benefit of the contractor in the particular controversy for which it is bringing suit, but that the contractor has been an intended beneficiary all along." *Parsons Evergreene*, 18-1 BCA ¶ 37,135 at 180,725; *see also Freightliner*, 225 F.3d at 1366; *Cessna*, 126 F.3d at 1451-52 ("[I]f the primary intended beneficiary of a statute or regulation is the government, then a private party cannot complain about the government's failure to comply with that statute or regulation, even if that party derives some incidental benefit from compliance with it.").

Appellant pointed to only one relevant regulation in its argument: DFARS 252.247-7023. Appellant alleged that the CO violated DFARS 252.247-7023(d)—which requires the CO to process a request to use a foreign-flag vessel "as expeditiously as possible"—by failing to timely authorize its shipment via a foreign-flag vessel. (App. mot. at 7-14) However, as the government pointed out, the legislative history behind DFARS 252.247-7023 indicated that the intended beneficiary is the government (through its interest in a strong U.S. flag commercial merchant marine)[2]—not contractors. DFARS 247.5, OCEAN TRANSPORTATION BY U.S.-FLAG VESSELS (OCT 2010), implemented the Cargo Preference Act of 1904 (10 U.S.C.

---

[2] As put forward by MARAD "history has tought us that. . .the reservation of certain cargoes to U.S.-flag ships, is necessary for our national defense and a key driver of domestic and foreign commerce." Maritime.dot.gov/ports/cargo-preference, last visited June 29, 2021.

9

§ 2631) and directed the inclusion of DFARS 252.247-7023 in contracts with the Department of Defense.  DFARS 247.572 "Policy" stipulates:

> (a) In accordance with 10 U.S.C. 2631(a), DoD contractors shall transport supplies, as defined in the clause at 252.247–7023, Transportation of Supplies by Sea, exclusively on U.S.-flag vessels unless—
>
> (1) Those vessels are not available;
>
> (2) The proposed charges to the Government are higher than charges to private persons for the transportation of like goods; or
>
> (3) The proposed freight charges are excessive or unreasonable.

DFARS 247.572.

The Cargo Preference Act, which requires the use of U.S.-flag vessels to transport supplies bought for or purchased by the military or defense agencies, was enacted to promote the U.S. merchant marine industry over lower-cost foreign competition—not to benefit contractors.  *See* 10 U.S.C. § 2631.  Thus, the fact that some of DFARS 252.247-7023's provisions—including the requirement that the CO process requests to use foreign-flag vessels "as expeditiously as possible"—may incidentally benefit appellant does not change the fact that the government is the regulation's intended beneficiary.  *Cessna*, 126 F.3d at 1451-52.  Accordingly, even if appellant could prove that the CO violated DFARS 252.247-7023 by failing to timely authorize the request, it would still not be entitled to recovery under this theory.  *See id*. at 1451; *Parsons Evergreene*, 18-1 BCA ¶ 37,135 at 180,725.

Appellant failed to meet its burden of demonstrating that the CO abused her discretion in rejecting appellant's request to use a foreign-flag vessel or by failing to authorize its request in a timely manner.  Accordingly, as a matter of law the government is entitled to adjust the contract price.  *See Empire Energy*, 03-1 BCA ¶ 32,079 at 158,553.

*Argument That Non-Compliance was Harmless is Irrelevant*

Appellant further asserted that the government "suffered no harm" (app. mot. at 16-18) from its non-compliance.  However, we agree with the government that this argument ultimately fails because the Board's primary consideration when

determining equitable adjustment is the change in the contractor's cost of performance, not damages to the government. *Federal Boiler Co.*, ASBCA No. 40314, 94-1 BCA ¶ 26,381 at 131,217.

*Deduction Amount*

"We have held that, when a contractor performs in a less costly manner than required by the contract, the Government is entitled to realize these savings; the change in cost of performance to the contractor, and not damages to the Government, is the basis of adjustment (even when the contractor's bid did not anticipate incurrence of the costs)." *Federal Boiler*, 94-1 BCA ¶ 26,381 at 131,217 (citing *Davis Constructors, Inc.*, ASBCA No. 40630, 91-1 BCA ¶ 23,394 at 117,391-92; *Bruce Andersen Co.*, ASBCA Nos. 29412, 32247, 89-2 BCA ¶ 21,872 at 110,037). Here, instead of deducting the changed amount of the cost of performance to the contractor, the government reduced the contract by $1,384,220, the full amount of the quote for the U.S. flag ship (SOF ¶ 14). The pleadings and the record before us do not demonstrate the proper deduction amount. Thus, we cannot decide quantum at this time.

## CONCLUSION

We grant the government's motion for summary judgment for entitlement but deny it as to quantum. Similarly, we deny appellant's motion for summary judgment concerning entitlement but grant appellant's motion to the extent that we cannot decide quantum based upon the record as we have it before us. Thus, the matter is returned to the parties to determine quantum in accordance with this decision.

Dated: July 19, 2021

HEIDI L. OSTERHOUT
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

11

I concur                                I concur


RICHARD SHACKLEFORD                      OWEN C. WILSON
Administrative Judge                     Administrative Judge
Acting Chairman                          Vice Chairman
Armed Services Board                     Armed Services Board
of Contract Appeals                      of Contract Appeals


I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62201, Appeal of AICI-Archirodon JV, rendered in conformance with the Board's Charter.

Dated: July 19, 2021


PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals