ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Vectrus Systems Corporation | ) ASBCA No. 61651 |
| | ) |
| Under Contract No. FA3002-17-C-0009 | ) |

APPEARANCE FOR THE APPELLANT: Joseph G. Martinez, Esq.
   Dentons US LLP
   Denver, CO

APPEARANCES FOR THE GOVERNMENT: Jeffrey P. Hildebrandt, Esq.
   Air Force Deputy Chief Trial Attorney
  Christopher M. Judge-Hilborn, Esq.
  Jason R. Smith, Esq.
  Rebecca Tatum, Esq.
   Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE YOUNG
ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

This appeal involves a contract awarded to Vectrus Systems Corporation (Vectrus) to provide base operations support services at Maxwell Air Force Base in Alabama. The Air Force moves for summary judgment, asserting that the requirement to provide certain property disposition services fell within the scope of Vectrus' contractual duties. Vectrus cross-moves for summary judgment, alleging that the Air Force changed the contract by directing it to provide property disposition services that were outside the scope of the contract's requirements, and seeks an equitable adjustment in the amount of $3,098,177. For the reasons stated below, we deny the motions.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTIONS

1. On May 15, 2015, the Air Force awarded Vectrus contract FA3002-15-C-0008 (the bridge contract), allowing for the continuation of base operation services at Maxwell Air Force Base until a new contract could be awarded (R4, tabs 3-4).

2. Vectrus had been providing base operation services (BOS) at Maxwell Air Force Base since at least 2009 under a series of four prior contracts with the Air Force. These services included a variety of logistical services, such as facility maintenance, human resources, and providing weather information to support flight operations. (App. mot. at 1)

3. On March 17, 2017, appellant was awarded contract FA3002-17-C-0009 (the BOS contract) to provide services pursuant to solicitation FA3002-13-R-0012 (the solicitation) (R4, tab 12; gov't mot. at 14). Performance under the BOS contract began on or about May 15, 2017 (R4, tab 12 at 264).

4. The Federal Property Management Regulations require that all Department of Defense-generated excess, surplus, foreign excess personal property, scrap, and other personal property be transferred to the Defense Logistics Agency Disposition Services (DLADS) for final disposition (gov't mot. at 4 (citing 32 CFR § 273.7(b)(1))).

5. The Bridge Contract included the following paragraph:

> 23.1.2.1.11. Receive and process supplies, equipment, furniture items, and hazardous materials processed for in-place sale or redistribution to Defense Reutilization and Marketing Office (DRMO], to include movement of property to DRMO as the Defense Reutilization and Marketing Service (DRMS) determines.

(The DLADS function) (R4, tab 4 at 2). The parties refer to this requirement as "the DLADS[1] requirement" or "the DLADS function." For simplicity, we adopt that nomenclature here. The other previous contracts between Vectrus and the Air Force also explicitly included this requirement (app. mot. at 14).

6. The solicitation did not include the DLADS function paragraph. Likewise, the BOS contract did not include the DLADS function paragraph.

7. Aside from this discrepancy, the relevant language under the BOS contract's performance work statement (PWS) sections 23, 25, and 28 is virtually identical to that of the bridge contract, including estimated workload data (*compare* R4, tab 2 at 1247, 1296, 1361 *with* R4, tab 4 at 1, 66, 127).

8. The BOS contract's PWS paragraph 25.1.1 outlines "Transportation Service Requirements":

> 25.1.1. DESCRIPTION OF SERVICES: Provide Maxwell-Gunter vehicle operations, maintenance management, and cargo (real world,

---

[1] The Defense Reutilization and Marketing Service (DRMS) and the Defense Reutilization and Marketing Office (DRMO) were previously responsible for disposing of DoD excess and surplus property. DRMS and DRMO have been renamed and are now referred to as Defense Logistics Agency Disposition Services (DLADS).

contingency/deployment, and exercises) transportation services, giving passengers and cargo, safe and timely local ground and military air transportation within the timeline directed by the operations order. Services include moving passengers and cargo (pickup and delivery services) via surface vehicles as well as preparing, loading and unloading cargo to and from a mix of government and commercial aircraft (excluding personal baggage handling).

(R4, tab 2 at 1296)

9. The BOS contract's PWS paragraph 28.1.2.4.1 requires Vectrus to:

[a]dminister all aspects of property management throughout the Services organization. Ensure property control and disposal processes are consistent throughout the organization. Maintain a single point accountability for excess and surplus property. Provide logistic guidance, training and assistance for Services activities receiving Appropriated, Nonappropriated and [DLADS] support. Provide ongoing guidance, training and technical assistance to Services activities on property management regulations, policies and procedures, to include newly assigned managers. Manage all aspects of Logistics Support in accordance with applicable directives as listed in Appendix 28A.

(R4, tab 2 at 1361)

10. On May 18, 2017, the Air Force issued a corrective action report (CAR) noting that the contractor disagreed with the government's interpretation[2] of the DLADS function and that the contractor "will not resume DLADS function until contract modification." The CAR also required the contractor to "respond with a written action plan that details corrective action of the [] deficiency" by May 23, 2017 (R4, tab 13).

11. On May 23, 2017, Vectrus responded to the CAR. Vectrus stated that PWS Section 23 of the contract did not incorporate "the verbiage and workload data for *non-supply line item materials* to be transported to [DLADS] as re-use or scrap" (R4, tab 14 (emphasis in original)). Vectrus stated that for calendar year 2016 it had

---

[2] The record does not contain a document showing the language of the government's interpretation that Vectrus disagreed with.

3

prepared for transport 675 tons of non-supply items, mostly furniture, and 12 tons of scrap steel. Vectrus pointed out that in previous contracts the personnel dedicated to this task were four supply technicians, while due to the exclusion of the non-supply items, only .335 full time equivalent positions were dedicated to this function in the BOS contract. Vectrus stated that it had advised the Air Force on numerous occasions over the prior two years that this language had been removed from the PWS, and that the Air Force had agreed that it had been removed and would be added back in on each occasion. In its response to the CAR, Vectrus requested that the "Required PWS Verbiage/Workload" be added back into the contract, quoting it as follows, "Receive and process supplies, equipment, furniture items, and hazardous materials processed for in-place sale or redistribution to appropriate Defense reutilization and Marketing Office (DRMO), to include movement of property to DRMO as the Defense Reutilization and Marketing Service (DRMS) determines...." (*id.*) We note this language is identical to paragraph 23.1.2.1.11 of the bridge contract (SOF ¶ 5).

12. The contract does not include the term "non-supply line item materials." Vectrus' claim does not explicitly define the term "non-supply line item materials," although Vectrus implies that it includes scrap metal and furniture (R4, tab 16).

13. On June 1, 2017, the Air Force issued a letter of concern directing Vectrus to perform the DLADS requirement. The letter advised Vectrus to submit a request for an equitable adjustment if it believed that this direction constituted a contract change. (R4, tab 15)

14. On January 26, 2018, Vectrus submitted a certified[3] request for an equitable adjustment (REA) in the amount of $3,098,177, asserting that the contract did not require it to receive, process, or transport "*non-supply line item materials*" to DLADS and that the Air Force's direction to do so constituted a change to the contract (R4, tab 16 (emphasis in original)).

15. On March 19, 2018, the Air Force's contracting officer (CO) treated the REA as a claim and issued a final decision (COFD) denying Vectrus' request in full and included appeal language. The CO found that "Vectrus' assertion that the PWS, Section 23, omitted the technical description and workload data for non-supply line item materials to be transported to DRMS (DLADS) as re-use or scrap is without merit." (R4, tab 19)

16. On June 14, 2018, Vectrus timely appealed the COFD to the Board and included a proper CDA claim certification.

---

[3] The certification language found in the submittal corresponded to the DFARS 252.243-7002 REA certification language.

4

17.  The Air Force initially moved to dismiss the appeal for lack of jurisdiction, contending that Vectrus' submittal was not a proper claim, and as such the Board lacked jurisdiction to consider the appeal.  However, the Air Force later withdrew its motion to dismiss, citing recent case developments at the United States Court of Appeals for the Federal Circuit and the Board.  (Bd corr. ltr. dtd. December 14, 2020).

## DECISION

*The Parties' Contentions*

Vectrus argues that the contract's PWS only required it to provide disposition services for property that it was responsible for managing under the contract—not all surplus property—and that the Air Force changed the contract by directing it to perform additional services.  Specifically, Vectrus asserts that the contract's language only requires limited management of surplus property incidental to its management of materials under the contract.  (App. mot. at 6)  Vectrus argues that this contract requirement does not include what it refers to as "non-supply line item materials" (*id*. at 7-13; SOF ¶ 11).  Vectrus also contends that its course of dealing under previous contracts with the Air Force supports that the Air Force intentionally removed the DLADS requirement from the contract (*id*. at 13-15).

The Air Force argues that the contract requires Vectrus to "receive, process, and transport" all surplus property—including scrap—to DLADS "for final disposition" (gov't mot. at 20).  The Air Force contends that the language contained in the Bridge contract's PWS section 23.1.2.1.11 setting forth the DLADS function is superfluous, and its absence from the contract does not absolve Vectrus of its obligation to perform the DLADS requirement (*id*. at 23).  Thus, according to the Air Force, there is no exception for "non-supply line item materials" and its direction to Vectrus to perform the DLADS requirement was not a change to the contract (*id*. at 20).

*Standard of Review*

Summary judgment is proper when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987).  A fact is material if it may affect the outcome of the decision. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  The movant bears the burden of establishing the absence of any genuine issue of material fact.  *Celotex*, 477 U.S. at 322.  Regardless of the type of claim being raised, the applicable substantive law determines which facts are material and thus preclude an entry of summary judgment.  *Liberty Lobby*, 477 U.S. at 248.  Such facts must be viewed in the light most favorable to the non-moving party.  *Id*. at 255; *C. Sanchez and Son, Inc. v. United States*, 6 F.3d 1539, 1541 (Fed. Cir. 1993).  However, the non-movant must set forth specific facts demonstrating the existence of a genuine issue of material fact; mere conclusory

5

statements and bare assertions are inadequate. *Mingus*, 812 F.2d at 1390-91; *Liberty Lobby*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [non-movant]'s position will be insufficient . . . ."). Our responsibility is not "'to weigh the evidence and determine the truth of the matter,' but rather to ascertain whether material facts are disputed and whether there exists any genuine issue for trial." *Holmes & Narver Constructors, Inc.*, ASBCA Nos. 52429, 52551, 02-1 BCA ¶ 31,849 at 157,393 (quoting *Liberty Lobby*, 477 U.S. at 249). "Contract interpretation is a question of law generally amenable to summary judgment." *Varilease Tech. Grp., Inc. v. United States*, 289 F.3d 795, 798 (Fed. Cir. 2002) (citing *Textron Def. Sys. v. Widnall*, 143 F.3d 1465, 1468 (Fed. Cir. 1998)). However, if the Board determines that it cannot resolve the dispute without reviewing extrinsic evidence, it should not grant summary judgment and instead allow the parties to conduct discovery. *See Korte-Fusco Joint Venture*, ASBCA No. 59767, 15-1 BCA ¶ 36,158 at 176,456.

> *Summary Judgment is not appropriate because the ambiguity created by the omission of the DLADS function may not be resolved as a pure question of law.*

A contract is ambiguous if it is reasonably susceptible to more than one interpretation. *Edward R. Marden Corp. v. United States*, 803 F.2d 701, 705 (Fed. Cir. 1986). The Board must look to the contract's plain language to determine whether an ambiguity exists. *American Int'l Contractors, Inc.*, ASBCA No. 60948, 18-1 BCA ¶ 37,061 at 180,411. If the contract's terms "are clear and unambiguous, they must be given their plain and ordinary meaning." *Alaska Lumber & Pulp Co. v. Madigan*, 2 F.3d 389, 392 (Fed. Cir. 1993). The Board may not use extrinsic evidence to "introduce an ambiguity where none exists." *Interwest Constr. v. Brown*, 29 F.3d 611, 615 (Fed. Cir. 1994); *see also Am. Int'l Contractors*, 18-1 BCA ¶ 37,061 at 180,411. Contract terms must be interpreted and read as a whole, giving reasonable meaning to all of its parts, and without leaving "a portion of the contract useless, inexplicable, void, or superfluous." *NVT Technologies, Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004) (citing *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991)). It is not enough that the parties differ in their respective interpretations of the contract's terms for an ambiguity to exist. *Metric Constructors, Inc. v. Nat'l Aeronautics and Space Admin.*, 169 F.3d 747, 751 (Fed. Cir. 1999). Rather, both parties' interpretations must fall within a "zone of reasonableness." *Id.*; *see also WPC Enters, Inc. v. United States*, 323 F.3d 874, 876 (Ct. Cl. 1963).

Ambiguities fall under two categories—latent and patent. *Certified Constr. Co. of Ky.*, ASBCA No. 57872, 15-1 BCA ¶36,068 at 176,133. The general rule is to construe ambiguous contract language against the drafter. *Metric Constructors,* 169 F.3d at 751. However, in the case of a patent ambiguity—one "sufficiently glaring to trigger" a reasonable contractor to inquire before submitting a bid—the ambiguity is construed against the contractor. *Certified Constr. Co.*, 15-1 BCA ¶36,068 at 176,133 (quoting *HPI/GSA 3C, LLC v. Perry*, 364 F.3d 1327, 1334 (Fed. Cir. 2004)). A patent ambiguity imposes upon the contractor an "affirmative

obligation to inquire to the government." *Parsons Evergreene*, ASBCA No. 58634, 18-1 BCA ¶ 37,137 at 180,803. If the government's response does not clear up the ambiguity, the contractor's duty to inquire further continues. *Id*. (citing *Phoenix Management, Inc.*, ASBCA No. 57234, 11-1 BCA ¶34,734 at 171,005). In the case of a latent ambiguity—one that is not patent—the Board enforces the general rule. *Metric Constructors*, 169 F.3d at 751; *see also Fort Vancouver Plywood Co. v. United States*, 860 F.2d 409, 414 (Fed. Cir. 1988).

Here, although included in the Bridge Contract as well as each of the previous contracts between Vectrus and the Air Force (SOF ¶ 5), PWS section 23.1.2.1.11 establishing the DLADS function is absent from the contract (SOF ¶ 6). The parties disagree as to the reasons leading to this omission. Vectrus alleges that at the time it submitted its proposal, it believed that the Air Force left this language out of the contract because it chose to reduce the scope of work required under the Contract (app. mot. at 17) and that the Air Force's direction to dispose of "*non-supply line item materials*" constituted a change to the contract (SOF ¶ 14). Vectrus also argues that it advised the Air Force that the language had been omitted from the BOS contract and the Air Force agreed it would be added back in (app mot. at 18, SOF ¶ 1). The Air Force argues that this paragraph was superfluous, and its removal did not reduce the scope of Vectrus' duties (gov't mot. at 1). Without supplementing the record to include further information on the facts leading to the omission of the DLADS function, the Board cannot determine whether either party's interpretation of the contact falls within a "zone of reasonableness" which would then invite the examination of whether the omission created an ambiguity, latent or patent, which in turn would guide how the ambiguous language should be construed. *Metric Constructors*, 169 F.3d at 751. As discovery is necessary to supply this information, we cannot resolve this matter within the confines of summary judgment. *Korte-Fusco Joint Venture,* 15-1 BCA at 176,456.

> *Summary Judgment is Inappropriate Because the Facts in Dispute May Affect the Outcome of the Appeal*

As we found above, the Bridge and previous contracts included PWS section 23.1.2.1.11, but the BOS contract omitted that language (SOF ¶¶ 5-6). Vectrus asserts that the term "non-supply line item materials," which was omitted from the contract, includes furniture and scrap metal, and that Vectrus repeatedly brought the omission of the DLADS function to the government's attention (SOF ¶¶ 11-12). The government asserts that Vectrus is required to dispose of all property for which it is responsible (gov't mot. at 19-20). The parties' course of dealing and facts related to the absence of this clause in the contract would shed light on whether the DLADS function was deliberately omitted from the contract. These are genuine issue of material fact as they may affect the outcome of the appeal. *Liberty Lobby*, 477 U.S. at 248-49. The existence of unresolved issues of fact require further development of the record, and makes the issues before us more than a mere question of contract interpretation.

Accordingly, this appeal is not ripe for summary judgment. *See Celotex*, 477 U.S. at 322; *Korte-Fusco*, 15-1 BCA ¶ 36,158 at 176,456.

<u>CONCLUSION</u>

Because there are disputes of material fact requiring further development of the record, summary judgment is not appropriate. Accordingly, the motions are denied.

Dated: February 14, 2022

LIS B. YOUNG
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61651, Appeal of Vectrus Systems Corporation, rendered in conformance with the Board's Charter.

Dated: February 15, 2022

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

8